In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3327

ANNE E. SCHEURER,

*Plaintiff-Appellee,*

*v.*

FROMM FAMILY FOODS LLC,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 15-cv-770-jdp — **James D. Peterson**, *Chief Judge*.

ARGUED MAY 31, 2017 — DECIDED JULY 17, 2017

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Anne Scheurer filed this sexual harassment and retaliation suit under Title VII of the Civil Rights Act of 1964 against defendant Fromm Family Foods. During discovery, Fromm learned that Scheurer's contract with the staffing agency that employed her and directed her to Fromm included an arbitration clause. Fromm moved to compel arbitration. The district court denied the motion. Such a denial is immediately appealable under the Federal

Arbitration Act, 9 U.S.C. § 16(a)(1)(B), and Fromm has appealed. We affirm.

The question is whether employer Fromm, which did not have a written arbitration agreement with Scheurer, can enforce against her the arbitration clause in her agreement with the staffing agency. This question is governed by state law, in this case, Wisconsin law. See *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). We agree with the district court that Fromm has not shown a legal basis for compelling Scheurer to arbitrate her Title VII claim against Fromm. We first review the factual and procedural background leading to this appeal. We then examine Fromm's only theory for compelling arbitration that it has not waived.

I.   *Factual and Procedural Background*

In August 2013, in Beaver Dam, Wisconsin, plaintiff Anne Scheurer applied to work at Richelieu Foods, which outsourced its staffing needs to Remedy Intelligent Staffing, a temporary staffing agency. The application form she signed with Remedy for placement with Richelieu contained an arbitration agreement.[1] She was assigned to work for a time for Richelieu, but that assignment ended after some months.

---

[1] The key sentence said, with grammar mistake included: "In the event there is any dispute between Employer and I relating to or arising out of relating to my employment or the termination of my employment, which Employer and I are unable to resolve informally through direct discussion, regardless of the kind or type of dispute, Employer and I agree to submit all such claims or disputes to be resolved by final and binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association within the state of employment." Supp. App. 35. The arbitration clause identified Title VII claims in the list of types of claims that would be covered.

About a year after she first applied, Remedy placed Scheurer with Fromm Family Foods. Scheurer alleges that while working at Fromm, her supervisor sexually harassed her. The present appeal does not require us to consider the merits of her claims; we assume for present purposes that her allegations are true. Briefly, she alleges that her supervisor took advantage of his access to her personnel file to obtain her personal telephone number and repeatedly harassed her in unwelcome ways, including sexually explicit comments to her in front of other employees. Scheurer alleges that she complained to Fromm management and that the supervisor had a history of sexual harassment and discrimination against women in the workplace. She also alleges that Fromm took no serious action to address the sexual harassment and instead fired her.

Richard Best, the chief operating officer of Fromm, submitted an affidavit that actually tends to support Scheurer's claim. He testified that Fromm immediately investigated the harassment complaint and took unspecified action against the supervisor. So far, so good for Fromm. But Best also said that Fromm tried to arrange a work situation that would have separated Scheurer from the supervisor, but that when that proved "impossible," Fromm asked Remedy to assign Scheurer to another client. That action seems to amount to Fromm terminating Scheurer's employment with it, assuming she can show joint employment. From the sequence of complaint, unspecified discipline of the supervisor, an unsuccessful effort to separate the two people, followed by termination of the complaining subordinate, the inference of retaliatory intent would not seem unreasonable.

Scheurer filed this lawsuit against Fromm—but not Remedy—under Title VII for sexual harassment and retaliation. 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3(a). Scheurer's mandatory disclosures in the federal discovery process included her application to Remedy, which included the arbitration agreement. Fromm argued that arbitration should be compelled under the contract law principle of equitable estoppel and because Fromm was a third-party beneficiary of the agreement.

The district court denied Fromm's motion. *Scheurer v. Fromm Family Foods, LLC*, 202 F. Supp. 3d 1040, 1046 (W.D. Wis. 2016). The court correctly relied on state law and first determined that equitable estoppel did not apply because there was no basis for finding that Fromm relied on Scheurer's arbitration agreement since Fromm did not even know about it. *Id.* at 1043–44. The court also found that Fromm was not a third-party beneficiary of Remedy's agreement with Scheurer. *Id.* at 1045–46.

II. *Analysis*

The question on appeal is whether Fromm can enforce the arbitration agreement between Remedy and Scheurer to compel arbitration of her claims against Fromm. That question is at bottom a question of contract law.

The standard of review for a district court's ruling on a motion to compel arbitration turns on the procedural posture of that ruling. We have said on occasion that we review *de novo* a district court's ruling on a motion to compel arbitration, but that we review any findings of fact for clear error. E.g., *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 779–80 (7th Cir. 2014), citing *Lumbermens Mutual Casualty Co. v. Broadspire Management Services., Inc.*, 623 F.3d 476, 480 (7th

Cir. 2010); *James v. McDonald's Corp.*, 417 F.3d 672, 676 (7th Cir. 2005); *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Arbitrability of a dispute is often a question of law that does not depend on undisputed facts, but in other cases it can present a mixed question of law and fact. See 21 Williston on Contracts § 57:68 (4th ed. 2017).

The Federal Arbitration Act actually provides for jury trials on the question of arbitrability if there is a factual dispute as to whether "an agreement for arbitration was made." 9 U.S.C. § 4. A court reviewing such a jury finding must uphold the finding if it is supported by a reasonable basis in the record. See, e.g., *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1446 (7th Cir. 1995), citing *Carmel v. Clapp & Eisenberg, P.C.*, 960 F.2d 698, 703 (7th Cir. 1992). Similarly, if the judge held an evidentiary hearing, findings of fact would be reviewed for clear error. See, e.g., *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1026, 1028 (7th Cir. 2002). Where there are were no factual disputes, however, as is the case here, then review should be *de novo*. See, e.g., *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1151 (7th Cir. 2016), *cert. granted*, — U.S. —, 137 S. Ct. 809 (2017), citing *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012). Accordingly, because there are no disputed factual issues material to the motion to compel arbitration, we review *de novo* the district court's denial of that motion.[2]

---

[2] In some situations, arbitrability may depend on equitable doctrines such as waiver and estoppel, which may require a court to resolve issues such as prejudice and reliance. See, e.g., *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756–57 (7th Cir. 2002) (affirming finding that party had waived its contractual right to arbitrate); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390–91 (7th Cir. 1995) (same); *St.*

The Federal Arbitration Act requires federal and state courts to place written arbitration agreements on the same footing as other contracts. 9 U.S.C. § 2; *Kindred Nursing Centers, Ltd. v. Clark*, 581 U.S. —, —, 137 S. Ct. 1421, 1424 (2017) (citations omitted); *Arthur Andersen*, 556 U.S. at 629–30 (citations omitted). Under the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich*, 417 F.3d at 687; 9 U.S.C. § 4. Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983).

At bottom, however, arbitration is contractual. A party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Zurich*, 417 F.3d at 687, quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); see also *Arthur Andersen*, 556 U.S. at 630–31 (state law governs

---

*Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 591 (7th Cir. 1992) (same). We typically review the application of such doctrines for abuse of discretion, and nothing about arbitration would seem to call for a different approach. Plaintiff has not argued for such deferential review here, however. The role of equitable discretion in deciding arbitrability and the standard of review may benefit from further consideration in a case where it makes a difference. Cf. *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) (reversing finding of waiver under *de novo* review).

whether a contract with an arbitration agreement is enforceable).

In *Arthur Andersen*, the Supreme Court directly addressed which law governs who may enforce an arbitration agreement. The Court explained that "traditional principles of state law" govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party. *Arthur Andersen*, 556 U.S. at 631 (quotations and citation omitted). The Court stated its holding in terms directly applicable here: "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Id.* at 632.[3]

*Arthur Andersen* identified assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary, waiver, and estoppel among those state law principles that could govern who may enforce the agreement. *Id.* at 631. We have also included assumption and agency in the list of state law doctrines governing when a non-signatory may be bound to arbitration. *Zurich*, 417 F.3d at 687.

---

[3] The district court correctly cited *Arthur Andersen* and followed its holding by applying Wisconsin state contract law to Fromm's motion to compel arbitration. *Scheurer*, 202 F. Supp. 3d at 1043. In its opening appellate brief, however, Fromm argued that federal law governed the issues, citing almost exclusively pre-*Arthur Andersen* decisions. Brief of Appellant at 8 n.4. (The lone post-*Arthur Andersen* opinion, *Paragon Micro, Inc. v. Bundy*, 22 F.Supp.3d 880 (N.D. Ill 2014), took a more nuanced approach than Fromm indicates and did not cite *Arthur Andersen*, in any event.) Fromm did not bother to cite *Arthur Andersen* or the district court's reliance upon it. Effective appellate advocacy requires an appellant to confront directly, not to ignore, controlling Supreme Court precedent and the reasoning of the decision under review.

In the district court, Fromm argued that Scheurer should be compelled to arbitrate against Fromm based on contract principles of equitable estoppel and as a third-party beneficiary of Scheurer's contract with Remedy. On appeal, Fromm continues to argue that equitable estoppel should compel arbitration. It has dropped its third-party beneficiary argument. It has also raised for the first time on appeal a new argument on an agency theory. We affirm the district court's denial of the motion to compel arbitration. Equitable estoppel is not available because there is no evidence that Fromm relied on the arbitration agreement between Remedy and Scheurer. The other two theories have been waived, one in the district court and the other on appeal.

Pursuant to *Arthur Andersen*, we first address the doctrine of equitable estoppel under Wisconsin contract law. Substantive federal arbitration law does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen*, 556 U.S. at 630.

Under Wisconsin law, equitable estoppel requires: "(1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." *Pagan v. Integrity Solution Services, Inc.*, 42 F. Supp. 3d 932, 934 (E.D. Wis. 2014), citing *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 715 N.W.2d 620, 628 (Wis. 2006). Wisconsin courts and federal district courts applying Wisconsin law have rejected equitable estoppel claims when the party seeking to apply estoppel could not show specific facts supporting reasonable and detrimental reliance. See, e.g., *Parsons v. Associated Banc-Corp.*, 893 N.W.2d 212, 224 (Wis.

2017) (no reasonable reliance on defendant's initial acquiescence to plaintiff's unfounded jury trial demand); *United Central Bank v. Maple Court LLC*, No. 10-CV-00464, 2014 WL 2441046, at *7–8 (E.D. Wis. Aug. 19, 2014) (slight burdens arising from normal contract negotiations do not establish detrimental reliance); *Watertown Tire Recyclers, LLC v. Nortman*, 795 N.W.2d 493, 2011 WL 166100, at *10 (Wis. App. 2011) (table decision) (holding party's claim of equitable estoppel failed because it was unable to "set forth specific facts" showing detrimental reliance); cf. *Affordable Erecting*, 715 N.W.2d at 629–30 (plaintiff was equitably estopped from pursuing claims; plaintiff induced defendant's reasonable reliance on apparent settlement of claims by not objecting to insurer's issuance of settlement checks).

Fromm cannot establish reliance here. As the district court found, there is no evidence "that Fromm relied on (or even knew of) the fact that Scheurer had signed an agreement with an arbitration provision when it accepted her assignment from Remedy." *Scheurer*, 202 F. Supp. 3d at 1044. Fromm could not have relied upon an agreement it did not know about. At bottom, this case is that simple.

To avoid the district court's reasoning, Fromm relies primarily on our decision in *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981), and secondarily on *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010). These authorities do not establish a basis for compelling arbitration here.

In *Hughes Masonry*, decided long before *Arthur Andersen*, we found that the plaintiff had signed a construction contract that required arbitration. Plaintiff sued a defendant who was not a party to the contract itself but whose obligations were

spelled out in the contract. The claim was a tort claim, but proof would require the plaintiff to rely on the terms of the contract. We reasoned that the plaintiff could not assert a claim that relied upon the contract while avoiding the same contract's arbitration clause. The plaintiff seeking to avoid arbitration "cannot rely on the contract when it works to its advantage, and repudiate it when it works to … its … disadvantage." 659 F.2d at 838–39, quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 692 (S.D.N.Y. 1966). To the extent the *Hughes Masonry* reasoning survives *Arthur Andersen*, it does not apply here. Scheuer's claims arise under federal employment discrimination statutes and do not depend on her contract with Remedy.

Fromm finds somewhat stronger support from *Ragone* but the facts differ from this case in a critical way. In *Ragone*, an employee hired through a separate company sued for sex discrimination. She sued both the company with which she signed a contract, AVI, and also ESPN, the company for whom she worked directly. 595 F.3d at 119, 126. Her contract with AVI contained an arbitration clause, and ESPN sought to compel Ragone to arbitrate her claim against them as well, even though ESPN had not signed her employment contract. *Id.* at 119, 128. The Second Circuit affirmed a decision compelling Ragone to arbitrate her claims against both the staffing agency and ESPN. The court applied equitable estoppel because "a careful review of the relationship among the parties, the contracts they signed … , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* at 126–27 (quotations omitted).

Fromm urges us to adopt this theory and then to extend it to cases in which the employee asserts no claim against the company with which she has an arbitration agreement. We are not persuaded to adopt this extended version of the *Ragone* approach. It was clear in *Ragone*—it was the major thrust of the appeal—that Ragone would be required to arbitrate her claim against the staffing agency. Once a court knows a dispute is going to be arbitrated, the reasons for requiring claims against affiliated parties to be arbitrated become more powerful. Cf. *Webb v. Frawley*, 858 F.3d 459, 462 (7th Cir. 2017) (affirming order compelling arbitration of one plaintiff's claims but reversing order compelling arbitration of second plaintiff's claims where second plaintiff had not signed applicable arbitration agreement and was entitled to litigate claims in court).

In addition, we must remember that *Arthur Andersen* directs us to apply the state law of estoppel, and we see no basis in Wisconsin law for applying estoppel under these circumstances, where Fromm did not even know of the arbitration agreement and the staffing agency is not a party to the dispute, which is not a contract dispute at all. See *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255, 261–62, 262 n.9 (5th Cir. 2014) (collecting cases; observing that its own "prior decisions applying federal common law, rather than state contract law, to decide such questions … have been modified to conform with *Arthur Andersen*.").

For the first time on appeal, Fromm argues that the doctrine of agency should compel arbitration. "The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court." *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d

1231, 1238 (7th Cir. 1997), citing *Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*, 67 F.3d 1333, 1337 (7th Cir. 1995); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008), quoting *Christmas v. Sanders*, 759 F.2d 1284, 1291 (7th Cir. 1985). At oral argument, Fromm was unable to direct the court to its agency argument in the district court, referring only to the district court opinion's discussion of joint employment. See *Scheurer*, 202 F.Supp.3d at 1045 n.3. (While there is no mention of agency in Fromm's motion to compel arbitration, there is a short discussion arguing that arbitration should be compelled because Fromm is a *joint employer*.) In addition, Fromm made no attempt to show the basis for an agency theory under Wisconsin law, which would govern this issue.[4] The agency theory has been waived.

The decision of the district court denying Fromm's motion to compel arbitration is AFFIRMED.

---

[4] Wisconsin law of agency requires "an agreement of two parties, embodying three factual elements: (1) the manifestation of the principal that the agent is to act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to control the undertaking." *Norton v. American Home Mortgage Servicing, Inc.*, No. 11-C-842, 2011 WL 5828122, at *2 (E.D. Wis. Nov. 18, 2011), citing Wis. JI-Civil 4000; *Arsand v. City of Franklin*, 264 N.W.2d 579, 581 (Wis. 1978).