In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1486

A.D., a minor, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

CREDIT ONE BANK, N.A.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-10106 — **Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 29, 2017 — DECIDED MARCH 22, 2018

Before WOOD, *Chief Judge*, and RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. A.D., by and through her mother, Judith Serrano, brought this putative class action under the Telephone Consumer Protection Act. She seeks compensation for telephone calls placed by Credit One Bank, N.A. ("Credit One") to her telephone number in an effort to collect a debt that she did not owe. After discovery, Credit One

moved to compel arbitration and to defeat A.D.'s motion for class certification based on a cardholder agreement between Credit One and Ms. Serrano. The district court granted Credit One's motion to compel arbitration but certified for interlocutory appeal the question whether A.D. is bound by the cardholder agreement.[1] We granted A.D.'s request for permission to appeal. *See* 28 U.S.C. § 1292(b).[2] We now reverse the district court's grant of Credit One's motion to compel arbitration and remand for further proceedings consistent with this opinion. A.D. is not bound by the terms of the cardholder agreement to arbitrate with Credit One, and she has not directly benefited from the cardholder agreement such that equitable principles convince us to apply the arbitration clause against her.

# I

# BACKGROUND

## A.

In 1991, Congress amended the Communications Act of 1934 to address "the advent of automated devices that dial up to 1,000 phone numbers an hour and play prerecorded sales pitches." *Moser v. FCC*, 46 F.3d 970, 972 (9th Cir. 1995). The amending statute, the Telephone Consumer Protection Act ("TCPA"), makes it unlawful to use an "automatic telephone dialing system or an artificial or prerecorded voice" to call a cell phone without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). An individual who provides

---

[1] The district court also denied A.D.'s motion for class certification.

[2] The district court had jurisdiction under 28 U.S.C. § 1331.

her cell phone number to a creditor through a credit application "reasonably evidences prior express consent … to be contacted at that number regarding the debt." *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (FCC 2008). A creditor relying on the "prior express consent" exception to the TCPA has the burden of showing that "it obtained the necessary prior express consent." *Id.* at 565.

The TCPA provides a private right of action for individuals to claim that their rights under the TCPA have been violated. *See* 47 U.S.C. § 227(b)(3). Successful plaintiffs may recover the greater of the amount of (1) actual damages or (2) $500 for each violation, meaning each phone call. *Id.*

**B.**

Ms. Serrano opened a credit card account with Credit One in 2003. In 2010, she used A.D.'s cell phone to access her Credit One account by calling Credit One and providing her account number and the last four digits of her social security number. Using caller ID capture software, Credit One attached A.D.'s cell phone number to Ms. Serrano's account.

Ms. Serrano later fell behind on her credit card payments, and Credit One began calling the telephone numbers previously stored with her account in an attempt to collect the debt. In her complaint, A.D. alleges that, in the course of this collection process, Credit One repeatedly called her about her mother's debt. Specifically, A.D. alleges that she received a good number of calls from Credit One in October and November 2014.

Upon opening her account with Credit One, Ms. Serrano had signed a standard cardholder agreement. This agreement included, among other terms, an arbitration clause and class action waiver, which stated:

> **Agreement to Arbitrate:**
>
> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.
>
> …
>
> Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.
>
> …
>
> If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether

as a class action, private attorney general action, other representative action or otherwise.[3]

When A.D. first filed this action, Credit One was not aware that it had a cardholder agreement with her mother. A.D. did not state in her complaint that her mother was the probable target of Credit One's phone calls (although she was listed as A.D.'s guardian *ad litem* in the complaint). After eighteen months of discovery, and after reviewing its own records, Credit One finally realized that its caller ID capture system had added A.D.'s phone number to its database when Ms. Serrano used A.D.'s phone to access her account. At that point, Credit One sought to compel arbitration with A.D. based on the arbitration clause in Ms. Serrano's cardholder agreement.[4]

The only evidence that A.D. ever used Ms. Serrano's Credit One credit card was Ms. Serrano's deposition testimony that, on at least one occasion, Ms. Serrano had preordered smoothie drinks for her daughter and herself from a stand in the local mall and had sent A.D. to pick them up. She had instructed A.D. to pay for the smoothies with her Credit One card. This transaction occurred in 2014, when A.D. was fourteen years old.

---

[3] R.78-3 at 8.

[4] In response to Credit One's motion to compel arbitration, A.D. urged that Credit One had waived its right to arbitrate by waiting too long and by filing other substantive motions in the district court before moving to compel arbitration. The district court concluded that even if Credit One could have checked its databases for A.D.'s phone number earlier, Credit One did not have a factual basis for invoking its right to arbitration until Ms. Serrano's deposition, when it "learned the extent to which A.D. was connected to her mother's Credit One account." R.118 at 19.

The district court ruled with Credit One that A.D. was bound by the cardholder agreement's arbitration clause. In its view, even though A.D. had not signed the cardholder agreement, she must be considered an "Authorized User" under its terms. Therefore, continued the court, she is bound by the arbitration clause under the "direct benefits estoppel" theory. Under this theory, explained the court, a person should not receive a benefit under a contract while, at the same time, repudiating a disadvantage under the contract. The court then reasoned that the cardholder agreement had allowed A.D., when picking up the drinks ordered by her mother, to represent to the store that Credit One would pay for the purchase. She therefore had benefited from the cardholder agreement between her mother and Credit One. Having accepted a benefit under the contract, the district court concluded, she must accept the burden of the arbitration clause.

Because it concluded that the arbitration clause in the cardholder agreement was applicable, the court stayed the case pending the outcome of arbitration. A.D. filed a motion to reconsider, or, in the alternative, to certify the arbitration question for interlocutory appeal under 28 U.S.C. § 1292(b). The district court denied the motion to reconsider but granted the motion to certify the ruling for interlocutory appeal. In certifying the question for interlocutory appeal, the court noted that "[t]here is a substantial ground for difference of opinion because the contours of the arbitration-by-estoppel doctrine in the Seventh Circuit are unclear."[5] We later granted a petition for certification.

---

[5] R.126 at 2.

## II

## DISCUSSION

We review a district court's ruling on a motion to compel arbitration de novo. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017). Any findings of fact underlying that decision are reviewed for clear error. *Id.* As we noted in *Scheurer*, "arbitrability may depend on equitable doctrines such as waiver and estoppel, which may require a court to resolve issues such as prejudice and reliance." *Id.* at 752 n.2. We review a district court's decision to apply an equitable doctrine for an abuse of discretion, and "nothing about arbitration would seem to call for a different approach." *Id.*

## A.

Our case law establishes three bedrock principles about the enforcement of arbitration agreements. First, the Federal Arbitration Act evinces a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Second, an arbitration agreement generally cannot bind a non-signatory. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Finally, arbitration agreements generally are enforceable against non-signatories only in a handful of limited circumstances, depending on the applicable state law. These limited exceptions are: (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference. *Id.*

These bedrock principles allow us to set forth, in more detailed fashion, particular considerations that must guide our resolution of the present controversy. Section 2 of the Federal

Arbitration Act "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (citation omitted) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). It requires federal courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citation omitted). We will compel arbitration under the Federal Arbitration Act "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer*, 863 F.3d at 752.

However, because arbitration agreements are contracts, a "party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Therefore, the general rule is that non-signatories are not bound to arbitration agreements. *See Zurich*, 417 F.3d at 687. We will enforce an arbitration agreement against a non-signatory if the party seeking to compel arbitration can show that an exception to this general rule applies. *Id.*

The direct benefits estoppel doctrine applied by the district court is one such exception. *See id.* To determine whether an exception applies to make "a contract, including an arbitration agreement, … enforceable by or against a non-party," we look to "traditional principles of state law." *Scheurer*, 863 F.3d at 752 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)); *see also Warciak v. Subway Rests., Inc.*, 880 F.3d

870, 872 (7th Cir. 2018). Here, the cardholder agreement specifies that Nevada law applies to disputes arising under the contract, and the parties have not suggested that any other law is applicable.[6]

From these observations, the analytical framework that we must follow in our resolution of this matter becomes evident. We first must determine whether A.D. is bound by the arbitration clause. If she is not, we must determine whether Nevada law nevertheless would bind her under the direct benefits estoppel theory.

### B.

We first examine whether, under ordinary principles of contract law, A.D. is bound by the arbitration clause.

Credit One submits that A.D. is bound by the cardholder agreement as an Authorized User. The cardholder agreement provides a mechanism for cardholders to designate other individuals as Authorized Users of their accounts:

> **3. AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized

---

[6] Specifically, the cardholder agreement reads: "**GOVERNING LAW:** This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence." R.78-3 at 7.

User who is at least fifteen years of age, you understand that: 1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; 2) the Authorized User will have access to certain account information including balance, available credit and payment information. … ; 3) we reserve the right to terminate the Card Account privileges of an Authorized User by closing your Account and issuing you a new account number; 4) the Account may appear on the credit report of the Authorized User. … ; 5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; 6) you can request the removal of the Authorized User from your Account via mail or telephone.

**Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. This Fee will be assessed annually in the month the Authorized User was added to the account.[7]

---

[7] *Id.* at 4.

Notably, by its terms, the arbitration clause specifically applies to claims "made by anyone connected with" the account holder, "such as a co-applicant or authorized user" of the account.[8]

The district court held that because Ms. Serrano told A.D. to use the credit card to pick up the smoothies, Ms. Serrano had made her an authorized user of the account. The court seemingly relied on the language from the cardholder agreement that "[i]f you allow someone to use your Account, that person will be an Authorized User."[9]

In our view, the district court's analysis is difficult to square with the overall language of the cardholder agreement.

The cardholder agreement sets forth a *specific* procedure that an account holder must follow to add an authorized user to her account. This provision makes it clear that an individual does not become an Authorized User simply by *using* the credit card to complete the cardholder's transaction. Rather, the term clearly foresees an Authorized User as playing a far more durable role in the account.

In order to designate a person as an Authorized User, an account holder must notify Credit One that she wishes to add an Authorized User to the account, so that Credit One can issue a card in the Authorized User's name. The Authorized User has many of the same rights under the cardholder agreement as the account holder and can use the card to complete her own transactions, not just those of the account holder. The

---

[8] *Id.* at 8.

[9] *Id.* at 4.

durability of the arrangement is also made clear by the nineteen-dollar fee imposed on the account holder for adding an Authorized User. Furthermore, and most importantly for A.D.'s case, the Authorized User must be at least fifteen years old.

It is undisputed that neither Ms. Serrano nor Credit One followed any step of this process. Ms. Serrano did not request that Credit One add A.D. as an Authorized User. Credit One did not send A.D. a card with her name on it (and in fact, Credit One was unaware of A.D.'s relationship to Ms. Serrano until eighteen months after A.D. filed this action). A.D. did not have any rights under the cardholder agreement that the contract gives to true Authorized Users. Credit One never assessed Ms. Serrano the nineteen-dollar annual fee for adding an Authorized User. Indeed, A.D. was fourteen years old at the time of the smoothie transaction and, therefore, not even eligible to become an Authorized User under the cardholder agreement.

Although this analysis seems straightforward, we turn to examine two possible arguments to the contrary. First, the arbitration clause of the cardholder agreement does not capitalize "authorized user." This style might suggest that a different meaning should be attributed to the term in the arbitration clause from the one prescribed for the rest of the contract. Secondly, Credit One submits that the Authorized User clause creates more than one category of Authorized User: those who are Authorized Users because the account holder "allow[s] [them] to use [the] Account," and those who are "at least fifteen years of age" and subject to all of the rights and responsibilities identified in the Authorized User provision.

Neither the contract language read as a whole nor the governing law supports these arguments. Even if we were to accept, for the sake of argument, that the contract creates multiple categories of Authorized Users (or "authorized users," as the arbitration clause reads), and even if someone can become one kind of authorized user just by using the credit card, Credit One's position cannot surmount two major stumbling blocks. First, as we have noted earlier, it is a fundamental principle of arbitration law that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). A.D. simply did not consent to arbitrate with Credit One. More fundamentally, A.D. did not have legal capacity to enter into a contractual relationship with Credit One. A.D. was a minor at the time of the smoothie transaction. Under applicable state law, minors lack capacity to enter into contracts and can disaffirm their obligations under contracts formed before they reach the age of eighteen.[10] Moreover, A.D. certainly engaged in an act of disaffirmation by filing this lawsuit and asserting her status as a minor.[11] Assuming, for the sake of argument, that A.D.

---

[10] This is true under the laws of both Nevada (the law governing the cardholder agreement) and California (the law of A.D.'s residence). *See* Cal. Family Code § 6710; Nev. Rev. Stat. § 129.010. *See generally* Restatement (Second) of Conflict of Laws § 198 (Am. Law Inst. 1971).

[11] *Berg v. Traylor*, 56 Cal. Rptr. 3d 140, 148 (Cal. Ct. App. 2007) ("No specific language is required to communicate an intent to disaffirm. 'A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect.' Express notice to the other party is unnecessary." (citation omitted) (quoting *Spencer v. Collins*, 104 P. 320, 322 (Cal. 1909))); *W.M. Barnett Bank v.*

formed *any* kind of contractual relationship with Credit One before she reached the age of majority, she has disaffirmed any obligation under that contractual relationship that she might have had.

Credit One also argues that A.D. has waived any argument that she does not qualify as an Authorized User under the terms of the agreement or that, as a minor, she has a right to disaffirm the contract. It is true that, at the district court level, A.D. did not make any specific arguments about the scope of the authorized user provision of the cardholder agreement. However, as the party seeking to compel arbitration, Credit One had the burden of showing that A.D. was bound by the cardholder agreement as an authorized user. *See Zurich*, 466 F.3d at 580 (setting forth elements that a party seeking to compel arbitration must prove). Credit One only obliquely made such an argument at the district court through the conclusory statement in its motion to compel arbitration that because "Ms. Serrano permitted Plaintiff A.D. to use the card on Plaintiff's behalf. … Plaintiff became an

---

*Chiatovich*, 232 P. 206, 214 (Nev. 1925). In *Chiatovich*, the Supreme Court of Nevada held that a defendant had waived the defense of infancy by not pleading it. "The plea of infancy," the court held, "is a personal defense, which, after coming of age, one may or may not interpose. The general doctrine is that the note of an infant is voidable, not void, and may be ratified after he comes of age." *Chiatovich*, 232 P. at 214. "If the defendant were of age when sued, his failure to plead his infancy at the time of the contract would clearly be a waiver and implied ratification." *Id.* (internal quotation marks omitted). Notably, A.D. was still a minor at the time she filed the lawsuit. This is clear on the face of the complaint. *See* R.1 at 1 ("Plaintiff A.D., is a minor, age 15 at the time of filing … .").

'Authorized User.'"[12] Credit One cannot rely on waiver when it was Credit One's burden to show that A.D. had become an Authorized User under the cardholder agreement and was therefore subject to the arbitration clause.[13]

## C.

Having concluded that the terms of the cardholder agreement do not bind A.D., we turn to the issue upon which our colleague in the district court believed that there was some uncertainty: whether principles of equity and fairness nonetheless require A.D. to arbitrate with Credit One. Nevada has a strong preference for honoring arbitration agreements, but it will not enforce an arbitration clause against a non-signatory *unless* other principles of contract law make it appropriate to do so. *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 659–60 (Nev. 2008).[14] Nevada courts have adopted five

---

[12] R.91 at 10.

[13] Finally, we note that our conclusion that the arbitration clause is not enforceable against A.D. is consistent with the "equal-treatment principle that applies to arbitration agreements." *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under that principle, when parties have formed an agreement to arbitrate, we must place that arbitration agreement on equal footing with other contracts. For the reasons we have discussed, however, A.D. does not have a contractual relationship of any kind with Credit One.

[14] As we have discussed, under the cardholder agreement's choice-of-law clause, Nevada law governs the interpretation of the cardholder agreement. Credit One maintains that the choice-of-law clause also governs the direct benefits estoppel analysis. *See* Appellee's Br. 16. The district court applied federal law to the estoppel analysis. As we recently clarified in

"theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 660 (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Credit One urges that principles of equitable estoppel require that A.D. be bound to this arbitration agreement despite her age.

---

*Scheurer v. Fromm Family Foods LLC*, the question whether a party is equitably estopped from denying the application of an arbitration clause is a question of state contract law. 863 F.3d 748, 752–53 (7th Cir. 2017). We already have concluded that A.D. is not a party to the cardholder agreement, and generally, choice-of-law clauses in contracts do not apply to non-parties. *Cf. Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996) (stating that "[e]ven the strongest language choosing [another state's] law for purposes of interpreting the subcontracts would not necessarily bind" non-parties to the contract because "*they* did not sign the contracts"). Notably, "A.D. does not concede that Nevada law applies, because only if there is a valid contract can the choice of law provision in the agreement become effective." Reply Br. 7–8. However, A.D. does not otherwise meaningfully challenge the application of Nevada law in her reply to Credit One's contention; she does not offer another state's law as a viable option; and she does not propose that we engage in a choice-of-law analysis to determine which state's law to apply. Therefore, we consider her to have waived the issue and will apply Nevada law. *Cf. LAK, Inc. v. Deer Creek Enters.*, 976 F.2d 328, 331 (7th Cir. 1992) ("While we are not bound by the parties' choice of law, no party has challenged the application of Florida's substantive law. Thus, we proceed accordingly."). In any event, as we note in the text, Nevada has followed general common law principles of equitable estoppel.

**1.**

Estoppel is an equitable doctrine that prevents a non-signatory "from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'" *Id.* at 661 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). Credit One maintains that A.D. *directly* benefited under the cardholder agreement because Ms. Serrano asked her to make purchases with the card. According to Credit One, "A.D. obtained the same type of contractual benefit as Serrano," which is the ability to use the credit card to make purchases.[15] But any "benefit" that A.D. received with respect to the credit card was limited to following her mother's directions to pick up the smoothies that her mother had ordered previously. This limited direction derived from the mother-daughter relationship. A.D. had no relationship, contractual or otherwise, with Credit One. She derived no direct benefit from the cardholder agreement. Her mother, not A.D., benefited from the agreement, which allowed her, not A.D., to buy the smoothies. Credit One's position that A.D. directly benefited under the cardholder agreement and is therefore estopped from denying the application of the arbitration clause simply misapprehends the purpose and scope of the direct benefits estoppel remedy.

**2.**

An estoppel theory also can be premised on the character of the non-signatory's claim. When a non-signatory plaintiff's

---

[15] Appellee's Br. 18.

"case center[s] on its asserted rights under the … contract" containing the arbitration clause, the non-signatory is bound by the arbitration clause. *Id.* at 661; *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) ("In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.").

Credit One attempts to characterize A.D.'s straightforward TCPA claim as a claim seeking benefits under the cardholder agreement. Its argument is a convoluted and unpersuasive one. It points out that the TCPA does not apply to autodialed phone calls that are made with the called party's "prior express consent." 47 U.S.C. § 227(b)(1)(A). Whether A.D. consented to the calls, Credit One continues, depends on the terms of the cardholder agreement. Therefore, according to Credit One, because it has raised consent as an affirmative defense to A.D.'s TCPA claims, A.D.'s suit is one brought under the cardholder agreement.

The mere statement of this argument reveals its lack of cogency. As a party to the cardholder agreement, *Ms. Serrano* consented to phone calls from Credit One. Credit One's affirmative defense thus depends on whether Ms. Serrano's consent under the cardholder agreement can be imputed to A.D. According to Credit One, this question of contract interpretation transforms A.D.'s TCPA claim into one that relies on the cardholder agreement such that A.D. should be estopped from denying the application of the arbitration clause in her TCPA claim.

Consent is an affirmative defense under the TCPA, an affirmative defense that Credit One must establish. *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). It is not part of A.D.'s case. A.D. does not have to prove that she did not consent to the calls in order to succeed on her TCPA claims. Credit One's argument is entirely without merit.[16]

In her underlying TCPA action, A.D. has asserted no right under the cardholder agreement. Her action is under a completely separate statute protecting her from harassing phone calls. This is the "core" of her case. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001). In no way can her cause of action be considered premised on the cardholder agreement. If we were to hold A.D. amenable to the cardholder agreement arbitration clause simply because, as a matter of affirmative defense in the present action, Credit One might argue that Ms. Serrano consented to the calls when she signed that agreement, we would "threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003).

---

[16] This appeal does not give us an occasion to address the merits of the underlying case.

## Conclusion

For the reasons set forth in the foregoing opinion, we reverse the judgment of the district court and remand for further proceedings.[17] A.D. may recover the costs of this appeal.

REVERSED and REMANDED

---

[17] Because we conclude that the arbitration clause, including its class action waiver, does not apply to A.D., our remand permits the district court to reconsider its denial of A.D.'s motion for class certification.