NOTICE

Decision filed 04/21/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210413-U

NO. 5-21-0413

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| LEE SNYDER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| and | ) | |
| | ) | |
| STACEY SNYDER, | ) | |
| | ) | |
| Plaintiff and Cross-Appellee, | ) | |
| v. | ) | No. 21-L-352 |
| | ) | |
| JACK SCHMITT FORD, INC., and FORD MOTOR | ) | |
| CREDIT COMPANY, LLC, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's order granting defendants' motion to compel arbitration as to plaintiff Lee Snyder is affirmed where the language of the contract directs such result; the trial court's order denying defendants' motion to compel arbitration as to plaintiff Stacey Snyder is affirmed where Stacey is not a third-party beneficiary to the contract and the defendants failed to establish equitable estoppel as defined by the State of Illinois.

¶ 2    Plaintiff Lee Snyder appeals the trial court's order granting defendants Jack Schmitt Ford and Ford Motor Credit Company's motion to compel arbitration. Defendants cross-appeal the trial

1

court's denial of its motion to compel arbitration regarding plaintiff Stacey Snyder. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4       On September 8, 2020, Lee Snyder purchased a 2020 Ford F-150 pickup truck from Jack Schmitt Ford (Schmitt). As part of the purchase, Lee executed a Retail Purchase Agreement (RPA), which listed the vehicle's price as $57,000. Lee also executed an Illinois Vehicle Retail Installment Loan Contract (RILC) which provided, *inter alia*, credit to Lee and set forth the monthly payments related to the purchase. The latter document contained an arbitration clause; the former did not. The RILC stated, "Seller will assign this contract electronically to Ford Motor Credit Company, LLC ('Assignee'). That Assignee will then have the Seller's rights, privileges, and remedies." The RILC listed monthly payments of $57.46 and a total amount due of $4137. Additional facts related to the RILC are addressed, as necessary, in the analysis.

¶ 5       Lee attempted to contact Schmitt, including his salesman, multiple times regarding the discrepancy in the amounts listed in the RPA and RILC, but neither returned his call. On October 9, 2020, Lee paid $4137 to Ford Motor Credit Company who accepted payment, sent Lee a copy of the first page of the RILC stamped "Contract October 9, 2020, Paid in Full," and released its lien. On October 15, 2020, Ford issued a certificate of title to Lee. Thereafter, Schmitt employees called, emailed, and presented to the Snyder home, demanding that Stacey Snyder persuade Lee to return to the dealership to sign new contract documents.

¶ 6       When Lee did not sign new contracts, Schmitt contacted Lee's employer, the United States Air Force (USAF). On February 3, 2021, Schmitt sent follow up correspondence to Lee's commanding officer stating it had "just found out today" that Ford released the lien for the title. The correspondence also accused Lee of not making the payments required for the truck and

2

"intentional theft by deception." Lee's commanding officer contacted her commanding officer who thereafter contacted the USAF legal department. Lee's commanding officers later informed him that his actions raised issues about his integrity, which could jeopardize his military career. At that time, Lee had worked for the USAF for over 16 years and planned to retire after 20 years.

¶ 7 On February 18, 2021, the Snyders's attorney sent correspondence to Schmitt advising of a planned lawsuit against Schmitt and Ford based on Schmitt's interference with Snyder's employment. On March 2, 2021, Schmitt filed a complaint against Lee with United States Arbitration & Mediation (USA&M) seeking reformation of the contract and alleging: (1) breach of contract, (2) fraud, (3) fraud/theft by deception, and (4) criminal retail theft. On March 22, 2021, Lee and Stacey filed a 17-count amended complaint against Schmitt and Ford asserting 12 claims of defamation, tortious interference with employment relations, and invasion of privacy/intrusion upon seclusion. The remaining five counts requested declaratory judgments related to the RILC arbitration clause claiming: (1) the clause was unenforceable due to unconscionability, (2) Schmitt had no standing to enforce the clause because it assigned its rights to Ford, (3) the clause only applied to the RILC not the RPA, (4) the clause did not apply to Lee's and Stacey's claims because counts 1-12 were not related to the RILC, and (5) the clause did not apply to Stacey because she was not a signatory to the RILC.

¶ 8 On April 21, 2021, the defendants jointly filed a motion to compel arbitration. On December 10, 2021, following briefing and oral argument, the trial court granted Schmitt's motion to compel arbitration as to Lee's claims. The trial court found that, pursuant to the language of the arbitration clause, the arbitrator was required to determine Lee's claims, including his claim that the arbitration clause was unconscionable. Thereafter, the trial court referred Lee's claims to arbitration and stayed his claims pending arbitration. The trial court denied Schmitt's motion to

3

compel arbitration as to Stacey's claims after finding she was not a signatory to the contract and equitable estoppel was inapplicable pursuant to *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508 (2004). On December 20, 2021, Lee appealed pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). Schmitt cross-appealed on January 10, 2022.

¶ 9                                                    II. ANALYSIS

¶ 10    An order to compel or stay arbitration is injunctive in nature and subject to interlocutory appeal under Rule 307(a)(1). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). "Generally, the standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the circuit court's order." *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (2009). However, if the trial court's order is based on "construction of the arbitration agreement" and "states a question of law," we apply a *de novo* standard. *Peach v. CIM Insurance Corp.*, 352 Ill. App. 3d 691, 694 (2004). Here, the circuit court's decision was based on legal analysis and, therefore, our review is *de novo*.

¶ 11                                   A. Lee's Claims on Appeal

¶ 12    Both the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq*. (West 2020)) and the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq*. (2018)) empower state and federal courts to compel arbitration and stay any action in that court. 710 ILCS 5/2 (West 2020); 9 U.S.C. § 3 (2018). "While arbitration is a favored method of dispute resolution, courts have consistently cautioned that an agreement to submit to arbitration is a matter of contract." *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). Interpretation of a contract is a question of law and is subject to *de novo* review. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). The primary goal of contract interpretation gives effect to the parties' intent by

4

interpreting the contract as a whole, viewing each part in light of the others, and applying plain and ordinary meaning to unambiguous terms. *Id*. at 232-33.

¶ 13     "When deciding whether the parties agreed to arbitrate a certain matter ***, courts generally *** should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the RILC mandated governance by Illinois law with the arbitration clause governed by the FAA. Under the FAA, "the trial court typically decides the arbitrability of a dispute." *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 726 (2006); see also 9 U.S.C. § 4 (2018) ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

¶ 14     However, the parties are free to contract "gateway" threshold issues. *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. ___, ___, 139 S. Ct. 524, 529 (2019). These include whether the parties agreed to arbitration (arbitrability), whether the agreement covers a particular controversy (scope) (*id.*), and whether the arbitration clause is enforceable as a whole (validity).[1] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74-76 (2010). " '[A]mbiguities as to the scope of the arbitration clause' " are resolved in favor of arbitration given " 'the federal policy favoring arbitration.' " *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 (1995) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S., 468, 476 (1989)).

¶ 15     Here, the arbitration clause stated, *inter alia*:

---

[1]Conversely, "[i]f a party challenges the validity under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4 [of the FAA]." *Rent-A-Center*, 561 U.S. at 71.

"Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a 'Claim') without filing a lawsuit in court. Either you or Creditor ('us' or 'we') (each, a 'Party') may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. *** Claims include but are not limited to the following: *** 2) Claims regarding the interpretation, scope[,] or validity of this provision, or arbitrability of any issue except for class certification ***."

¶ 16       On appeal, Lee first argues that the trial court's granting of defendants' motion to compel his claims to arbitration was erroneous because the court, not the arbitrator, should decide the arbitrability of his claims. Notably, Lee does not dispute the specific language in the contract requiring the "arbitrability of any issue except for class certification" to be decided by arbitration. Instead, Lee's argument is premised on cases that reviewed an arbitrator's findings related to arbitrability (*Salsitz*, 198 Ill. 2d 1), cases that contained limited, as opposed to broad, arbitration language (*United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301 (1989)), or cases where no "gateway issue" language in the arbitration clause is found. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204; *Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153 (1999).

¶ 17       While there is no dispute that Illinois courts have found the issue of arbitrability may, or in some cases should, be decided by the trial court, the same is not seen here. As noted by the U.S. Supreme Court, when the contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied by the contract, even "if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.' " *Schein*, 586 U.S. at ___, 139 S. Ct. at 528. That Court has long held, and affirmed, the policy that parties may delegate threshold arbitrability questions to an arbitrator so long as the parties' agreement confers

6

such delegation by "clear and unmistakable" evidence. *Kaplan*, 514 U.S. at 944; *Rent-A-Center*, 561 U.S. at 69 n.1.

¶ 18    Here, Lee provides no compelling argument that avoids the precedential authority of the U.S. Supreme Court's decisions interpreting the parties' ability to delegate this "gateway threshold issue" to arbitration under the FAA. As such, we affirm the trial court's finding that the arbitrability of Lee's issues must be determined by the arbitrator.

¶ 19    Lee's second argument contends that his claims were outside the scope of the arbitration clause because neither party could have intended that his claims would be covered by the arbitration clause as they were unforeseen at the time of contracting. However, the scope of arbitration is also a gateway threshold issue which is determined by the language of the contract. *Schein*, 586 U.S. at ___, 139 S. Ct. at 529. Here, as with arbitrability, claims regarding the scope of the arbitration clause are clearly delegated to the arbitrator. However, we note, that even if the contract was silent on the scope issue, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). As such, we affirm the trial court's finding that the arbitrator must determine if Lee's claims fall within the scope of the arbitration clause.

¶ 20    Lee also argues that the arbitration clause is unconscionable and claims the trial court erred by delegating this issue to the arbitrator. However, this issue was also previously addressed by the U.S. Supreme Court. In *Rent-A-Center, West, Inc. v. Jackson*, the Court explained that "[t]he delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 68.

¶ 21    At issue in *Rent-A-Center* was whether the delegation of the validity of the arbitration clause to an arbitrator, pursuant to the terms of the arbitration agreement, was enforceable. *Id*. at 72. The Supreme Court found that a party may raise two types of challenges to the validity of the contract under federal law: "the agreement to arbitrate" and "the contract as a whole." *Id*. at 70. "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable" because "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id*. at 70-71. The Court noted that in the lower courts, the respondent "challenged only the validity of the contract as a whole" and never mentioned the delegation provision. *Id*. at 72. More specifically, respondent's argument was that "the 'entire agreement' favors Rent-A-Center and that the limitations on discovery further his 'contention that the arbitration agreement as a whole is substantively unconscionable.' [Citation.]" *Id*. at 74. Because the first time the respondent addressed the delegation provision was in his brief to the Supreme Court, the issue was raised "too late" and therefore forfeited. *Id*. at 75-76.

¶ 22    Similarly, in the case at bar, Lee only challenged certain portions of the arbitration agreement. While the first amended complaint requested a declaratory judgment regarding the arbitration clause, Lee's claim of unconscionability was limited to Schmitt's "unilateral right to choose the organization conducting the arbitration." Based thereon, Lee argued that the clause was "void and unenforceable because it is unconscionable." After the defendants filed the motion to compel arbitration, Lee argued that the arbitration clause was substantively unconscionable because it provided Schmitt "with the sole power to select the organization conducting the arbitration" and waived all of Lee's rights to participate in a class action. Lee noted that the class action waiver was severable and again argued that the Schmitt's "sole authority to select the

8

organization conducting the arbitration is void and unenforceable as unconscionable." Following oral argument,[2] the parties filed additional briefs in which Lee contended the arbitration clause was unconscionable for the reasons set forth above as well as the lack of appealability from the arbitrator's decision, the loss of discovery rights, and by allowing Schmitt to enforce his creditor rights in a court of law but only allowing Lee access to small claims court.

¶ 23     On appeal, Lee limited his unconscionability argument to Schmitt's sole authority to select an arbitration organization other than the American Arbitration Association, the loss of his ability to appeal from the arbitrator's decision, and the prohibition of any class actions. His reply brief reiterated these complaints and noted that the defendants conceded that the prohibition of judicial review was unenforceable but severable. Following oral argument before this court, the parties were asked to provide supplemental briefs addressing the Supreme Court's decision in *Schein*. In this pleading, Lee claimed that "the arbitration agreement, as a whole, including the delegation clause," was unenforceable; however, this is the first time that Lee ever specifically addressed the delegation clause. Just as in *Rent-A-Center*, we find the challenge is too late. As such, we find this issue is forfeited.

¶ 24     Finally, Lee argues that the trial court erred by finding that Schmitt could enforce the arbitration agreement after assigning all of its rights and interests to Ford. In support, Lee cites *Twenty First Century Recovery, Ltd. v. Mase*, 279 Ill. App. 3d 660, 664-65 (1996), and contends that an assignee stands in the shoes of the assignor and acquires all of the assignor's rights and

---

[2]No transcript from the hearing was provided because the hearing was not recorded. However, no bystander report or agreed statement of facts was provided either. Ill. S. Ct. R. 323 (eff. July 1, 2017). Therefore, if Lee argued anything other than what was previously briefed, there is no record. It is the appellant's "burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

liability in the assignment. He further argues that "once a party assigns all of its rights and interests in a contract, which includes an arbitration clause, it can no longer enforce the contract, including the arbitration clause."

¶ 25    "As a general rule, an assignment is a transfer of some identifiable property, claim or right from the assignor to the assignee." *Litwin v. Timbercrest Estates, Inc*., 37 Ill. App. 3d 956, 958 (1976). "The assignment operates to transfer to the assignee all the right, title or interest of the assignor in the thing assigned." *Id*. Here, while the RILC stated that Schmitt would "assign this contract electronically to Ford Motor Credit Company LLC ('Assignee')," there is no evidence that the assignment occurred. Without an actual assignment, Schmitt would undeniably retain all of its rights, including the right to enforce arbitration.

¶ 26    If the contract was assigned, Lee's argument is undermined by the arbitration clause language and underlying motion to compel which was filed *jointly* by Schmitt and Ford. The arbitration clause language defined "claims" to include "[c]laims arising out of or relating to *** *any resulting transaction or relationship, including that with the dealer ****." (Emphasis added.) Therefore, even assuming Schmitt assigned all its rights, including enforcement of the arbitration clause, to Ford, Lee provides no argument why Ford could not enforce the arbitration clause, including any claims related to the dealer, as provided by the arbitration clause.

¶ 27    We note, however, that the underlying complaint filed with USA&M was filed solely by Schmitt, not Ford. As noted above, if no assignment occurred, the propriety of Schmitt's enforcement is secure. However, if the contract was assigned to Ford, as claimed by Lee, and undisputed by Schmitt, we agree that Schmitt's rights to file an arbitration claim are suspect. See Restatement (Second) of Contracts § 317(1) (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by

10

the obligor *is extinguished in whole or in part* and the assignee acquires a right to such performance." (Emphasis added.)); see also *Sanders v. Savannah Highway Automotive Co.*, 852 S.E.2d 744, 746 (S.C. Ct. App. 2020) ("[W]here a party assigns agreements that include an arbitration clause, the assignor's right to compel arbitration under those agreements is extinguished." (Internal quotation marks omitted.)). However, we need not inquire as to whether Schmitt assigned its rights as this issue is one of arbitrability, delegated to the arbitrator pursuant to the agreement. Therefore, we leave the propriety of Schmitt's arbitration complaint to the arbitrator and affirm the trial court's order compelling Lee's claims to arbitration.

¶ 28                    B. Schmitt's Issues on Cross-Appeal

¶ 29    The defendants jointly cross-appealed the trial court's order finding that arbitration was not required for Stacey's claims and denying defendants' motion to compel. On appeal, defendants argue that nonsignatories to an arbitration agreement may be compelled to arbitrate claims when they are third-party beneficiaries and that the "proper" principles of equitable estoppel prevented Stacey from avoiding the arbitration clause. The defendants also request this court find the decision in *Ervin*, 349 Ill. App. 3d 508, was wrongly decided.

¶ 30    The general rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Nothing in the FAA "authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA has been interpreted to hold that " 'traditional principles of state law' govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party." *Scheurer v Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (quoting *Arthur Andersen LLP v. Carlisle*,

11

556 U.S. 624, 631 (2009)). Here, there is no dispute that Stacey did not sign the RILC. Instead, defendants argue that Stacey is a third-party beneficiary of the contract or, in the alternative, that equitable estoppel precludes her avoidance of the contractual arbitration clause.

¶ 31    Defendants' joint motion to compel was based on the "claim" defining language of the arbitration clause that included, "Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, *including that with the dealer, or any such relationship with third parties who do not sign this contract*." (Emphasis added.) In support, the motion claimed that Stacey received a direct benefit from Lee's purchase of the vehicle and "she established a 'relationship' with the 'dealer' even though she was not a direct signatory to the agreement." The motion further claimed that Stacey was a " 'third party' contemplated by Lee at the time of signing the documents to purchase the vehicle in question." However, despite the arbitration clause stating that the FAA governed the claim, defendants' motion was based on the Illinois Uniform Arbitration Act, ignored the FAA's requirement to file the motion to compel in the United States district court (9 U.S.C. § 4 (2018)), ignored the FAA's statutory requirement that the trial court determine whether Stacey's claim was covered by the clause (*id*.), and argued the issue "should initially be decided by the arbitrator" based on case law addressing the Illinois Uniform Arbitration Act.

¶ 32    The defendants also argued that estoppel bound Stacey to the arbitration agreement because once she "benefitted from permitting her family to own and use the truck in question without having to use over $50,000 of family funds to pay for it, she became unjustly enriched" and was "equitably estopped from denying the application of the Arbitration clause to her claims." The defendants also argued that Stacey's claims related to and arose out of the contract as evidenced by the inclusion of the contract and financing documents to the complaint and all of Schmitt's

12

offending conduct had "to do with the attempt to rectify the paperwork and collect the amount owed." The defendants' arguments in its sur-reply were similar but also claimed that both Stacey and Schmitt "are intended third party beneficiaries actually referenced by description in the contract."

¶ 33    The trial court found that "a third-party beneficiary cannot be compelled to arbitrate under the Act," citing *Yandell v. Church Mutual Insurance Co*., 274 Ill. App. 3d 828, 833 (1995). We note, however, that *Yandell* addressed the Illinois Uniform Arbitration Act. *Id.* at 830. Under the FAA, the third-party beneficiary doctrine applies to arbitration agreements. *Johnson v. Noble*, 240 Ill. App. 3d 731, 735 (1992); *Ervin*, 349 Ill. App. 3d at 510, 514. However, those cases (as well as those cited therein) addressed whether the doctrine could be applied when a nonsignatory was attempting to enforce an arbitration clause against a signatory.

¶ 34    "It goes without saying that a contract cannot bind a nonparty." *Waffle House*, 534 U.S. at 294. The federal policy favoring arbitration "does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place." *Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir. 1997). "[T]he general policy in Illinois [is] that a nonsignatory should not be forced to arbitrate a dispute pursuant to an arbitration clause it had not agreed to or be forced to invoke an arbitration clause to resolve a dispute pursuant to an arbitration agreement to which it is not a party." *Ervin*, 349 Ill. App. 3d at 513-14.

¶ 35    An exception to the general policy lies with a third-party beneficiary of a contract. " 'In third-party contracts, a party (the promisor) promises to render a certain performance not to the other party (promisee), but rather to a third person (beneficiary).' " *Hutsonville Community Unit School District No. 1 v. Illinois High School Ass'n*, 2021 IL App (5th) 210308, ¶ 17 (quoting *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13). "Illinois

13

recognizes two types of third-party beneficiaries, intended and incidental." *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386, 394 (2009). "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract." *Id.* Conversely, "an 'incidental beneficiary' has no rights and may not sue to enforce them." *Id.* "Liability to a third-party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989) (citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 258 (1931)). "It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person." *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). "Such intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.* If a contract makes no mention of the person or the class to which he or she belongs, that person is not a third-party beneficiary of the contract. *Id.* "[I]n Illinois, there is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 19 (1994).

¶ 36    Therefore, the operative question becomes whether the parties to the contract intended to confer a direct benefit on the purported third-party beneficiary at the time the contract was entered. *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 27. Here, the RILC addresses promises to render certain performances by Lee, Schmitt, and Ford to each other. Nothing in the underlying contract reveals any promise to render any performance to any third person. Further, nothing in the contract directly mentions Stacey by name or names her as a

14

third-party beneficiary of the contract. Despite this deficiency, the defendants claim that Stacey falls within the class of "third parties who do not sign this contract." However, the defendants point to no language within the contract stating that the signatories are conferring any benefit or are rendering performance to the "third parties who do not sign this contract." Nor is there any contractual language conferring any benefit to that class. Instead, the contractual language only confers benefits and obligations to Ford, Schmitt, and Lee.

¶ 37    While the defendants contend that Stacey received a direct benefit by virtue of being married to Lee and the vehicle being marital property such argument has no relevance when addressing third-party beneficiary contractual rights, as those rights stem solely from the language of the contract. Here, there is no contractual language conferring "third-party beneficiary" status on Lee's spouse or any other third party who did not sign the contract. Stacey is, at most, an incidental beneficiary who may receive an unintended benefit from the contract and therefore, has no rights to sue or be sued under the terms of the contract. See *Hacker*, 388 Ill. App. 3d at 394. Accordingly, we find that Stacey is not required to arbitrate her claims against Schmitt and Ford under the third-party beneficiary theory.

¶ 38    The defendants also contend that Stacey is precluded from avoiding the arbitration clause due to equitable estoppel. In Illinois, " 'equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.' " *Ervin*, 349 Ill. App. 3d at 514 (quoting *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399 (2004)). " 'The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.' " *Id.* (quoting *In re Marriage of Smith*,

15

347 Ill. App. 3d at 399). Here, the defendants provide no facts or argument to satisfy the requirements for equitable estoppel as defined by Illinois courts.

¶ 39    Instead, the defendants argue that we should adopt the "direct benefits theory" of equitable estoppel accepted in several federal courts to compel a nonsignatory to arbitration. The defendants cite *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000), and *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005), to contend that the "direct benefits theory" estops a party from "asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."

¶ 40    In *International Paper*, the buyer (a nonsignatory of the contract between a distributor and a manufacturer) was suing the manufacturer based on the guarantees contained within the contract between the distributor and the manufacturer that contained an arbitration agreement. *International Paper*, 206 F.3d at 413. Because the buyer was relying on a contract that contained both the guarantees and the arbitration agreement, the court found that the buyer was required to also accept the arbitration clause contained therein. *Id*. at 413-14.

¶ 41    In *In re Weekley Homes*, the daughter of the home purchaser brought a claim against the builder who entered into a contract, that contained an arbitration clause, with her parents. *In re Weekly Homes, L.P.*, 180 S.W.3d at 129. The court noted that the daughter was not merely a resident in the home; she had directed the builder on how it should construct many features in the home, demanded extensive repairs to the home, requested and received reimbursement for expenses she incurred while repairs were made, and conducted settlement negotiations with the builder. *Id*. at 133. The court found that the daughter, "[h]aving obtained these substantial actions

16

from [the builder] by demanding compliance with provisions of the contract," could not "equitably object to the arbitration clause attached to them." *Id*. The court found that "once [the daughter] deliberately sought substantial and direct benefits from the contract, and [the builder] agreed to comply, equity prevent[ed] her from avoiding the arbitration clause that was part of that agreement." *Id*. at 134. The court agreed with federal court holdings "that when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later 'turn[ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.' " *Id*. at 135 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). "A nonparty cannot have his contract and defeat it too." *Id*.

¶ 42     In both cases, the nonsignatories previously or currently were requesting enforcement of the underlying contract. Here, however, the defendants point to no document in which Stacey requests enforcement of Lee's contract or has alleged that either Schmitt or Ford failed to perform the contractual duties described in the RILC. Nor can they as Stacey's claims against Schmitt and Ford for defamation related to allegedly false statements made by Schmitt to Lee's employer. Similarly, her claims for invasion of privacy and intrusion upon seclusion related to Schmitt's appearance at Lee's and Stacey's residence and Schmitt's publication of the details of the vehicle's purchase to Lee's employer.

¶ 43     Citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001), the defendants contend that Stacey should be estopped from avoiding the arbitration clause because she "knowingly accepted a benefit stemming from a provision of the contract itself, as opposed to a benefit arising from the mere 'contractual relation of [the] parties.' " We note, however, that this doctrine does not apply "when the benefits alleged are insubstantial or indirect." *In re Weekley Homes, L.P.*, 180 S.W.3d at 134. The "benefits must be direct—which is to say,

17

flowing directly from the agreement." *MAG Portfolio Consult GMBH*, 268 F.3d at 61 (citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

¶ 44    By example, estoppel was found in *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993), because Noraudit took advantage of its ability to use the Deloitte name which, pursuant to the agreement that allowed such use, also required Noraudit to comply with the dictates of the agreement which contained the arbitration clause. *Id.* Therefore, Noraudit was estopped from denying its obligation to arbitrate under the agreement. *Id*.

¶ 45    What the defendants fail to address however, is the fact that the direct benefits theory is "limited." *Thompson v. Witherspoon*, 12 A.3d 685, 696 (Md. Ct. Spec. App. 2011). "A 'direct benefit' is deemed to be one contained within the provisions of the contract, which stands in contrast to an 'indirect benefit' which flows as a result of the contract formation." *Id.* Just as with the third-party beneficiary theory, nothing in the RILC provided Stacey with any "direct benefit." Any benefit to Stacey was incidental or indirect because it derived solely from Lee's ownership of the vehicle as evidenced by Ford's release of lien and the certificate of title which granted sole ownership of the vehicle to Lee.

¶ 46    In short, we find the connection at bar even more nebulous than seen in *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018). *A.D.* applied Nevada law when addressing the direct benefit theory and its applicability to the mother's use of her daughter's telephone to contact the credit card company seven years after opening the account and the credit card company's use of the daughter's number to contact the mother when she fell behind on her payments. *Id.* at 1058. In *A.D.*, the district court found that the daughter was an "authorized user" of the card due to her one-time use of the card, as directed by her mother, to purchase smoothies in 2014. *Id*. at 1059, 1061. Under the terms of the agreement, as an "authorized user" the daughter was required to submit her

18

claims to arbitration. *Id*. On appeal, however, the court found that the daughter was not, and could not, be an authorized user as defined by the contract, and therefore considered the "direct benefit" theory of estoppel. *Id*. at 1064. The court found that

> "any 'benefit' that A.D. received with respect to the credit card was limited to following her mother's directions to pick up the smoothies that her mother had ordered previously. This limited direction derived from the mother-daughter relationship. A.D. had no relationship, contractual or otherwise, with Credit One. She derived no direct benefit from the cardholder agreement. Her mother, not A.D., benefited from the agreement, which allowed her, not A.D., to buy the smoothies. Credit One's position that A.D. directly benefited under the cardholder agreement and is therefore estopped from denying the application of the arbitration clause simply misapprehends the purpose and scope of the direct benefits estoppel remedy." *Id*.

¶ 47    Just as seen in *A.D.*, Stacey has not directly benefited from the RILC. Lee benefited from the agreement by being able to purchase the vehicle on credit. Stacey's potential indirect benefit stems solely from her relationship with Lee. Similarly, her use of the vehicle is dependent on Lee, not any right provided by the RILC. Nor has Stacey asserted any right under the RILC. Her counts against the defendants sound in tort stemming from Schmitt's actions at her home and allegedly false statements made by Schmitt about Stacey to her husband's employer. In short, under these facts, to find Stacey estopped from avoiding the arbitration agreement would greatly undermine the general policy that a party cannot be compelled to arbitrate a matter without its agreement. *United Steelworkers of America v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582 (1960).

¶ 48    In *Ervin*, this court declined to expand the doctrine of equitable estoppel beyond that previously expressed in Illinois. *Ervin*, 349 Ill. App. 3d at 517. Given our consideration of the

19

"direct benefits" theory of equitable estoppel, we are not convinced that *Ervin* was wrongly decided. This is especially true when, generally, "third persons who are not parties to an arbitration agreement or to a contract containing an arbitration clause, and who are not claiming under or through such parties, are not bound by the arbitration agreement." *Application of Equitable Estoppel to Compel Arbitration By or Against Nonsignatory—State Cases*, 22 A.L.R. 6th 387, § 2 (2007). The A.L.R. notes that different "equitable estoppel" theories apply depending on whether the nonsignatory is being compelled or is compelling compliance with an arbitration clause. *Id*. The "alternative" estoppel theory allows nonsignatories standing to compel arbitration "when the issues in dispute are intertwined with the agreement that the signatory signed, or if there is a close relationship between the entities involved and between the alleged wrongs and the contract, or if the claims are intimately founded in and intertwined with the underlying contract obligations." *Id*. However, "[a]s a rule, a signatory cannot compel a nonsignatory to arbitration under the 'alternative' estoppel theory" and the "courts in deciding such cases have applied ostensibly stricter rules intended to make it more difficult to compel a nonsignatory to arbitrate its claims than vice versa, the rationale being that arbitration is fundamentally a matter of contract and it is unfair to bind a party to a contract that it has not signed." *Id*.

¶ 49    Just as seen in *Ervin*, none of the case law presented by the defendants is controlling. Despite the length of time since *Ervin* was issued, we are unaware of any case in which the Supreme Court required a state to amend its definition of equitable estoppel pursuant to the FAA. The Illinois Supreme Court continues to rely on a definition of equitable estoppel similar to that espoused in *Ervin* (*Geddes v. Mill Creek Country Club, Inc*., 196 Ill. 2d 302, 313-14 (2001); *In re Scarlett Z.-D*., 2015 IL 117904, ¶ 25) as well as the underlying principles that " ' "[a]rbitration under the [FAA] is a matter of consent, not coercion" ' " and " ' "[i]t goes without saying that a

20

contract cannot bind a nonparty." ' " *Carter*, 2012 IL 113204, ¶ 55 (quoting *Waffle House*, 534 U.S. at 293-94, quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)). As such, we decline the defendants' request to overrule *Ervin* and expand the doctrine of equitable estoppel in Illinois.

¶ 50    Given our findings herein, we affirm the trial court's denial of the defendants' motion to compel Stacey's claims to arbitration.

¶ 51                                    III. CONCLUSION

¶ 52    For the foregoing reasons, we affirm the trial court's order compelling Lee's claims to arbitration and denying the defendants' motion to compel Stacey's claim to arbitration.

¶ 53    Affirmed.