LIQUORAMA, INC., Plaintiff and Counterdefendant-Appellee, *v.* AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Defendants.—(JOSEPH A. STAUB *et al.*, Defendants and Counterplaintiffs-Appellants.)

First District (2nd Division)    No. 79-1419

Opinion filed July 22, 1980.

Keith & Greenblatt, of Chicago (Michael P. Cascino and Joseph A. Maculuso, of counsel), for appellants.

Feiwell, Galper & Lasky, Ltd., of Chicago (George S. Feiwell, Michael A. Braun, and Bernard L. Rivkin, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Joseph and Helen Staub appeal from a judgment entered in the Circuit Court of Cook County, ordering specific performance of an option to extend a lease. The Staubs are beneficial owners of rental property held in trust by the American National Bank and Trust Company of Chicago. Liquorama, Inc., an Illinois corporation, is lessee of the property in question. Plaintiff Liquorama brought an action to specifically enforce a renewal clause in its lease, naming American National Bank and the Staubs as defendants. Joseph and Helen Staub

counterclaimed for damages and attorneys' fees. The trial court found in Liquorama's favor, and the Staubs prosecute this appeal.

On January 25, 1974, Liquorama, Inc., contracted for a five-year lease on a store located at 4416-36 South Kedzie Avenue, Chicago, Illinois. American National Bank, trustee of the rental property, signed the lease as lessor. Liquorama subsequently took possession of the premises, operating a retail liquor store. Joseph and Helen Staub, beneficiaries of the trust in which the rental property was held, entrusted the management of the property to their son, John Staub. Plaintiff Liquorama mailed rent checks to John Staub, and the parties maintained an uneventful landlord-tenant relationship for nearly five years.

The lease allowed lessee an option to extend the term for an additional five years, provided that lessee give lessor written notice of intent to exercise such renewal on or before February 1, 1979. On January 26, 1979, Benjamin DiGiacomo, president of Liquorama, undertook to give such renewal notice to the lessor. He dictated a letter to his secretary, Barbara Cerauskas, which letter was then typed by Ms. Cerauskas, signed by Mr. DiGiacomo, and mailed at 5 p.m. the same afternoon from downtown Chicago. The letter was sent by regular U.S. mail, and was addressed to John Staub's place of business at 823 Commerce Drive, Oakbrook, Illinois. According to Ms. Cerauskas' testimony, the envelope had proper postage, and bore the return address of DiGiacomo's Chicago law office.

Unknown to lessee, John Staub's firm had relocated to 2000 Spring Road Drive, Oakbrook, Illinois, on February 1, 1978. During the intervening year, all rent checks, including the one for February 1979, were mailed to 823 Commerce Drive, and were received by John Staub. Mr. Staub denied receipt of lessee's letter of renewal, and DiGiacomo and his secretary testified that the letter was not returned.

The trial court found that the letter was in fact sent, and was received by Staub, the lessors' agent, before the February 1 deadline. The trial court considered the conflicting testimony of the parties, and John Staub's testimony that he would have preferred that the lessee not exercise its option to renew, since, among other reasons, the rent for the extended term was set at $1500 per month, about half what Staub believed to be the fair rental value. The trial court concluded that Liquorama had effectively exercised its option, and ordered specific performance by lessors.

The Staubs appeal, contending that the lease required that mailed notices be sent by certified or registered mail, so that Liquorama's notice, sent by regular mail, was ineffective regardless of receipt, since proper form of notice was a condition precedent to exercise of the option. Appellants further argue that the trial court erred in its finding that the renewal notice was timely received by lessor.

Appellant-lessors rely heavily on the reference to certified or registered mail in paragraph 20 of the lease agreement, and assert that this paragraph does not conflict with paragraph 31 of the lease, which requires only "written notice" for renewal. Appellee contends that paragraphs 20 and 31 are inconsistent, and cites various rules of construction, *e.g.*, that the ambiguity should be construed against the lessor-drafter. Since paragraph 20 is crucial to interpretation of the parties' agreement, we set it forth in its entirety:

> "20. Notices may be served on either party, at the respective addresses given at the beginning of this lease, either (a) by delivering or causing to be delivered a written copy thereof, or (b) by sending a written copy thereof by United States certified or registered mail, postage prepaid, addressed to Lessor or Lessee at said respective addresses in which event the notice shall be deemed to have been served at the time the copy is mailed."

Numerous decisions in this State have established the general principles that interpretation of lease is governed by the intent of the parties, and that the relevant intent is to be ascertained from the language of the instrument, according to the common meanings of the words used. (*E.g., American National Bank & Trust Co. v. Olympic Savings & Loan Association* (1978), 60 Ill. App. 3d 722, 724, 377 N.E.2d 255.) Where an agreement is clear and unambiguous, courts will not resort to rules of construction. (*H.B.G. Corp. v. Houbolt* (1977), 51 Ill. App. 3d 955, 962, 367 N.E.2d 432; *Book Production Industries, Inc. v. Blue Star Auto Stores, Inc.* (1961), 33 Ill. App. 2d 22, 30, 178 N.E.2d 881.) Here, the plain meaning of paragraph 20 is that (a) notices can be served by delivery, which delivery can be performed in person or by agent, and (b) notices can also be served by certified or registered mail, in which case delivery will be effective upon mailing. As the trial court apparently found, clause (b) does not require notice by certified or registered mail; it merely shifts the risk of nonreceipt to the addressee if the sender elects to use certified or registered mail.

The trial court found no conflict between paragraph 20 and paragraph 31 (requiring written notice for renewal), and neither does this court. Clause (a) of paragraph 20 allows giving notice "by delivering or causing to be delivered." Nothing in this language excludes delivery by regular mail, although, if such delivery is made, clause (b) implies by exclusion that no "mailbox rule"[1] will apply. The clear import of the wording is that, should the sender elect to use regular mail, the notice will be effective only upon actual delivery. We also note that clause (a) requires notice to be delivered to the record address of the parties. In

---

[1] According to the "mailbox rule," acceptance of a contract is effective when mailed, rather than when received. See generally 1 Corbin on Contracts §78 (1963).

December 1974, lessor instructed lessee that the property was to be managed by John Staub. Thereafter, lessee corresponded with John Staub at the only address provided—823 Commerce Drive.

■■■ In the instant case, the trial court found that the notice in question was sent, and was delivered. The trial court used the phrase "as a matter of law" in connection with its determination of the facts in this case. Appellants contend that the trial court incorrectly applied a presumption that a mailed notice may be considered as having been received. Use of such a presumption in this case would constitute error. Because of the difficulty in proving receipt of mail, the courts in this State employ a presumption that a letter, properly addressed and with proper postage is presumed received by the addressee in due course. Denial of receipt by addressee, however, rebuts the presumption, in which case the issue becomes a question of fact to be decided by the trier of fact. (*Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 129, 356 N.E.2d 1150.) Lessors here deny receipt of lessee's letter of renewal. We note further that lessee's letter did not bear lessor's correct address. This fact also bars use of the presumption, rendering the question of receipt an issue for the trier of fact. *Pillsbury Co. v. Buchanan* (1976), 37 Ill. App. 3d 876, 878, 346 N.E.2d 386.

■ When the presumption of receipt is inapplicable, the fact-finder must rely on other evidence, such as the addressee's receipt of contemporaneous mail from the same sender, the fact that the questioned letter was not returned to the sender, and the credibility and motivation of the parties. (See *Tabor*, at 130-31.) Unless the evidence clearly requires a finding of non-receipt, it is within the purview of the trier of fact to find that an incorrectly addressed letter was received by the addressee within a reasonable time after mailing. See *Pillsbury*, at 878.

Taken as a whole, the remarks of the trial court indicate that no presumption of receipt was employed. On the contrary, the trial court's findings appear to have been based on the evidence bearing on credibility, including lessors' acknowledged receipt of misaddressed rent payments for one year, and the statements by lessors' agent regarding the rental value of the property and his preference that the tenant not remain. Findings of fact made by the trial court will not be disturbed on appeal unless they are contrary to the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624; *Austin Liquor Mart, Inc. v. Department of Revenue* (1974), 18 Ill. App. 3d 894, 904, 310 N.E.2d 719.) The evidence in the record does not suggest that the fact-finder's conclusion in the present case is clearly wrong; the finding of delivery is therefore not contrary to the manifest weight of the evidence, and should not be disturbed by this court. See *John Allen Co. v. Neuendorf* (1978), 60 Ill. App. 3d 559, 561, 377 N.E.2d 365.

In order to support its decision, the trial court not only had to find that the letter in question was delivered, but that it was delivered by the February 1 contract deadline. The lessee's evidence showed that the letter was mailed in Chicago on Friday, January 26, 1979. The letter then had to arrive at lessor's office in Oakbrook, a nearby suburb, by the following Thursday, February 1. While evidence of mailing can raise no conclusive presumption of timely receipt, the fact that a letter was mailed is at least some evidence of delivery a few days later. (*Angelo v. Board of Review, Department of Labor* (1978), 58 Ill. App. 3d 50, 52, 373 N.E.2d 858.) In the past, courts in this State have indulged in presumptions that letters, once mailed, would arrive at specific destinations within a given time. (*E.g., Keogh v. Peck* (1925), 316 Ill. 318, 323, 147 N. E. 266 (absent evidence of actual delay, the court can take judicial notice that a letter mailed from Chicago on February 21 would arrive at Philadelphia by April 29); *Dubuque Fire & Marine Insurance Co. v. Oster* (1897), 74 Ill. App. 139, 145 (presumption that a letter mailed in Dubuque, Iowa, will arrive in East Dubuque, Illinois, the following day).) This court need not employ a presumption that a letter mailed from Chicago will arrive in Oakbrook, Illinois, within six days. It is enough to say that the trial court's finding of fact that the letter in question was not only received, but was timely received, is not contrary to the manifest weight of the evidence. Such a finding by the trial court is implicit in the court's express finding of delivery, and in its legal conclusion that delivery of the notice effected proper exercise of the option.

Given its conclusions as to the fact and timeliness of delivery, the trial court was fully justified in finding that, as a matter of law, the lessee corporation properly exercised its option to renew. The order for specific performance was therefore appropriate.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

PERLIN, P. J., and HARTMAN, J., concur.