In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2575

TERRY KASS, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellant*,

*v.*

PAYPAL INC., a Delaware corporation, and
PAYPAL CHARITABLE GIVING FUND, a Delaware
nonprofit corporation,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-01542 — **Martha M. Pacold**, *Judge*.

_____

ARGUED MAY 31, 2023 — DECIDED JULY 27, 2023

_____

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The issue in this appeal is
whether plaintiff Terry Kass agreed to mandatory arbitration
of any disputes she would have with defendant PayPal Inc.
When Kass created a PayPal account, she consented to Pay-
Pal's then-current User Agreement, which did not require

arbitration of disputes. PayPal later amended its standard agreement to add a mandatory arbitration clause. A few years after that amendment, Kass found that PayPal had mishandled charitable donations she had made through PayPal, so she joined with several charities in filing a class action lawsuit against PayPal and its charitable arm, PayPal Charitable Giving Fund. Defendants moved to compel arbitration, arguing that Kass and the charity plaintiffs were all bound by the mandatory arbitration clause in the later User Agreement. The district court (Judge Gettleman) granted the motion in June 2018. *Friends for Health v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *7 (N.D. Ill. June 12, 2018). The case went to arbitration, where defendants prevailed. In 2022, the district court (Judge Pacold) ultimately affirmed the arbitrator's decision in favor of defendants. *Friends for Health v. PayPal, Inc.*, No. 17 CV 1542, 2022 WL 2799395, at *1 (N.D. Ill. July 14, 2022).

Kass has appealed, and the principal issue is whether she could be compelled to arbitrate in the first place. Relying on the "mailbox rule," which creates a rebuttable presumption that a properly sent communication has been received, the district court concluded that Kass had consented to the amended User Agreement, including its mandatory arbitration provision. *Friends for Health*, 2018 WL 2933608, at *6. In finding consent, however, the district court erred by deciding a disputed issue of fact that must be decided by a trier of fact: whether Kass received notice of the amended User Agreement and implicitly agreed to the new arbitration clause. We vacate the district court's judgment against Kass and remand for a trial on that question.

I.   *Factual Background*

   A.  *PayPal's 2004 and 2012 User Agreements*

PayPal is one of the largest online payment processors in the world. Through PayPal, users can transfer money and make payments to businesses and other people. Users can also donate to charities through the PayPal Charitable Giving Fund, a 501(c)(3) charitable organization.

In 2004, Terry Kass created a PayPal account. As anyone creating a PayPal account must, Kass accepted PayPal's then-existing User Agreement. That 2004 User Agreement included an arbitration clause that was not mandatory. The 2004 User Agreement also allowed PayPal to amend the Agreement at any time by posting the amended terms on the PayPal website. The Agreement further provided that the Agreement "and any other agreements, notices or other communications regarding your account and/or your use of [PayPal] … may be provided to you electronically," either "posted on the pages within the PayPal website and/or delivered to your e-mail address."

In October 2012 PayPal amended the User Agreement to add a mandatory arbitration provision. Users could, however, opt out of the arbitration clause if they did so before December 1, 2012. The dispute at the heart of this appeal centers on whether Kass received and implicitly agreed to that amended User Agreement with its arbitration clause.

   B.  *Kass's Charitable Donations Through PayPal Charitable Giving Fund*

In November 2016, PayPal sent emails to Kass encouraging her to make year-end donations to charities through the Giving Fund. Following a link in those emails, Kass found

profiles on the Giving Fund website for thirteen charities to which she wished to donate. Each profile page provided the charity's name and mission statement and promised that 100% of the funds donated would be delivered to the charity. Before year's end, Kass donated a total of $3,250 to those thirteen charities through the Giving Fund website.[1]

According to the complaint, Kass later learned that only three of those thirteen charities actually received her gifts, and of those three, none knew that Kass had made the donations. Kass tells us that, although the Giving Fund had created profile pages for these charities on its website, PayPal and the Giving Fund would transfer donated funds only to charities that acted to register with both PayPal and the Giving Fund and created a PayPal "business" account. If unregistered charities did not register and claim donations made to them through the Giving Fund within six months, PayPal would "redistribute the[ ] funds to similar charities."[2]

II.  *Procedural History*

In February 2017, Kass and one of the charities to which she had donated, Friends For Health: Supporting the North Shore Health Center, filed this suit on behalf of themselves and similarly situated donors and charities against PayPal and PayPal Charitable Giving Fund. Federal jurisdiction was available under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Kass, then represented by counsel, brought

---

[1] PayPal later told Kass in an email that it had "added 1%" to her donations.

[2] According to Kass, the charities she tried to support through the Giving Fund in December 2016 still cannot confirm in 2023 that they actually received donations from her.

claims for unjust enrichment, an accounting, and violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq.

Defendants moved to compel arbitration, asserting that both Kass and the charity plaintiffs had consented to the arbitration provision included in the 2012 amendment to the User Agreement. The mandatory arbitration provision, defendants argued, was included in the User Agreements that the charity plaintiffs had accepted when they created their PayPal accounts. The district court agreed and ordered the charities' claims to be arbitrated. That conclusion is not challenged in this appeal.

The issue was less clear-cut with plaintiff Kass. The mandatory arbitration provision had not been in the earlier User Agreement Kass accepted when she created her PayPal account in 2004. Defendants argued, though, that Kass was bound by the provision because PayPal had posted the amended Agreement to its website and had emailed notice of the amended Agreement "to active PayPal users, such as Ms. Kass, in October 2012."

In support, defendants offered sworn declarations from two members of PayPal's legal department: Michelle Squires, a paralegal specialist, and Andrew McElmeel, an attorney. Squires said: "When PayPal amends the PayPal User Agreement, it posts a summary of significant changes that are being made to the User Agreement or even the amended terms themselves on its website as a 'Policy Update,'" and "[i]n some instances … also sends an email to its users notifying them that changes will be made." Squires also said that, in October 2012, a "Policy Update containing information about the addition of the Agreement to Arbitrate to the User

Agreement was posted on PayPal's website and contained the full text of the Agreement." Squires further said that a "Notice about the Policy Update was also e-mailed to active PayPal users in October 2012" and that "PayPal's records indicate that" Kass's account, which was created in 2004, "remain[ed] open" as of January 2018.

McElmeel echoed this in his declaration: "Consistent with [PayPal's] practice of sending email notice to existing PayPal users of amendments to the User Agreement prior to those amendments going into effect, PayPal sent" the Policy Update email "in October 2012 to all of its existing U.S. customers who, as of late September 2012, had a PayPal account that was not subject to an indefinite account limitation." McElmeel further said that because Kass's PayPal "account was open and not subject to an indefinite account limitation at or around the time" the Policy Update email was sent, "she *would have been* within the group of U.S. PayPal account holders to whom" the email was sent. (Emphasis added.) PayPal does not have a more specific record of sending that email notice to Kass or whether it was received, bounced back, or disappeared into cyberspace.

Kass denied that she had ever received or known of the 2012 amendment to the User Agreement. By sworn declaration, Kass testified that she had never seen the amended User Agreement posted to PayPal's website, that she did not receive an email notifying her of the amendment, and that she had never seen, known of, or agreed to the 2012 User Agreement with its mandatory arbitration clause.

In its 2018 decision, the district court found that the undisputed facts showed that Kass had accepted the terms of the 2012 User Agreement, including the mandatory arbitration

provision, and granted the motion to compel arbitration. *Friends for Health*, 2018 WL 2933608, at *7. The court determined that Kass's "assertions" that she had never viewed the Policy Update on PayPal's website and had not received the email notifying her of the 2012 amendments were insufficient to "create an issue of fact necessitating a trial." *Id.* at *5. Focusing on whether PayPal sent and Kass received the purported email notification, the court turned to the "mailbox rule." *Id.* at *6. Relying on our decisions in *Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013), and *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), the court saw the mailbox rule as creating a rebuttable presumption that an email has been "properly sent, received, and read." *Id.* "Kass' conclusory statement that she did not receive the email, with nothing to bolster it," the court concluded, "does not rebut this presumption." *Id.* Disposing of Kass's alternative arguments that she could not be bound to arbitrate, the court granted defendants' motion to compel arbitration in June 2018. *Id.* at *7.[3]

By May 2019, the parties had not yet begun arbitration. The district court dismissed the case without prejudice. Kass moved to reinstate the case, to stay it pending arbitration, and to allow Kass's counsel to withdraw. The court granted those motions. Proceeding without a lawyer, Kass demanded

---

[3] Because Kass has created a triable issue of material fact regarding receipt of PayPal's email notification, we need not reach her additional contentions: (1) that PayPal's ability to amend the User Agreement unilaterally is "unconscionable and unenforceable," (2) that the 2012 User Agreement was "not an amendment at all, but rather a completely new agreement to which [Kass] did not assent," (3) that Kass did not "knowingly and voluntarily consent to waive" Article III adjudication, and (4) that Kass's claims against the Giving Fund do not fall within the scope of the 2012 PayPal User Agreement.

arbitration. In June 2020, an arbitrator ruled in defendants' favor on all of Kass's claims, including the claims she had brought in the district court and several she added before the arbitrator.[4] Defendants then moved the district court to confirm the arbitrator's decision against Kass and to dismiss the charity plaintiffs' claims for want of subject-matter jurisdiction. The district court first found that it lacked subject-matter jurisdiction over the charity plaintiffs' claims but retained jurisdiction over Kass's claims. The court then confirmed the arbitrator's award in favor of defendants. *Friends for Health*, 2022 WL 2799395, at *1. Kass has appealed; the charities have not.

Kass challenges the district court's decision to compel arbitration, its conclusion that it retained subject-matter jurisdiction over her claims, and its decision to affirm the arbitrator's judgment. We must always ensure that there is subject-matter jurisdiction, whether or not the parties challenge jurisdiction. E.g., *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020), citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). We address first whether the district court properly retained subject-matter jurisdiction over Kass's claims. We conclude that it did. We then turn to whether Kass was properly compelled to arbitrate her claims. We conclude that she was not. Whether she was subject to mandatory arbitration under the 2012 User Agreement depends on whether Kass received an email from PayPal notifying her of that amendment. This is a question of fact that must be resolved by a trier of fact, not summarily by the court considering only

---

[4] Kass's additional claims included breach of contract, breach of fiduciary duty, consumer fraud under Illinois law, conversion, fraud, fraudulent conveyance, intentional and tortious interference, and unfair business practices.

the paper record. Because we remand for a trial on that factual dispute, we do not reach Kass's challenge to the district court's decision to affirm the arbitrator's judgment.[5]

III. *Subject-Matter Jurisdiction*

In a July 2022 order, the district court (Judge Pacold) found that it did not have subject-matter jurisdiction over the charity plaintiffs' claims but that it retained jurisdiction over Kass's claims. The district court found that it lacked subject-matter jurisdiction over the claims of the charity plaintiffs on the theory that the arbitration provisions rendered CAFA jurisdiction frivolous. The district court took a different path with Kass, concluding that it had jurisdiction over her claims because "Kass denied that she had ever agreed to individual arbitration and, even if she had, she believed that the arbitration agreement was unenforceable." For this reason, the court concluded, Kass's invocation of subject-matter jurisdiction under CAFA was not frivolous.

We agree with the conclusion about jurisdiction over Kass's claims but not the rationale. The fact (or allegation) that the parties agreed to arbitrate their disagreements does not affect subject-matter jurisdiction. Nor does subject-matter jurisdiction depend on the strength of arguments for and against arbitrability or a party's subjective belief that she should be able to defeat the motion to compel arbitration.

---

[5] Appellate jurisdiction is proper under 28 U.S.C. § 1291. The district court issued two separate judgments on the same day in 2022, one dismissing the charities' claims and the other Kass's claims. The two judgments add up to one final judgment that disposed of the entire case before the district court.

Arbitration offers at most an affirmative defense. It may be waived by failing to assert it. Fed. R. Civ. P. 8(c)(1); see, e.g., *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 888 (7th Cir. 2020) (defendant waived right to compel arbitration); *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 497 (7th Cir. 2018) (same); *Mautz & Oren, Inc. v. Teamsters, Chauffeurs, & Helpers Union, Local No. 279*, 882 F.2d 1117, 1126 (7th Cir. 1989) (party may waive arbitrability by failing to move "to compel arbitration" or to seek "a stay of the litigation pending arbitration" but raising arbitrability as affirmative defense is sufficient). In her complaint, Kass could establish CAFA jurisdiction without being required to anticipate that defendants would raise arbitration as an affirmative defense. A plaintiff "need not anticipate or refute potential affirmative defenses." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022); accord, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (plaintiff need not anticipate affirmative defense and plead around it in complaint).

As is true of most affirmative defenses, and certainly those that are waivable, an affirmative defense of arbitrability does not defeat subject-matter jurisdiction. See *Automobile Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional; it is a waivable defense that [defendant], in fact, waived."); *Leavell v. Kieffer*, 189 F.3d 492, 494–95 (7th Cir. 1999) (affirmative defense of statute of limitations does not affect jurisdiction, and complaint need not anticipate such defense); *International Union of Operating Engineers, Local 150 v. Rabine*, 161 F.3d 427, 431 (7th Cir. 1998) (availability of defense to arbitration did not defeat jurisdiction over action to enforce arbitral award); see generally, e.g., *Jogi v. Voges*, 480 F.3d 822, 825–26 (7th Cir. 2007) (absence of valid cause of action does

not affect subject-matter jurisdiction), citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); cf. *Pratt Central Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995) (affirming dismissal for lack of jurisdiction where contract contained valid limitation-of-liability clause that would keep damages below limit for diversity jurisdiction). The district court thus properly retained subject-matter jurisdiction over Kass's claims. We turn to whether she was properly compelled to arbitrate them.[6]

IV. *Analysis*

A.  *Standard of Review and the Mailbox Rule*

On appeal from a district court's ruling on a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., we review findings of fact for clear error and rulings on questions of law de novo. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). Under the terms of the Federal Arbitration Act, plaintiff could not appeal the district court's decision to compel arbitration in 2018. She had to go through the arbitration and await a final judgment approving the arbitrator's award before she could challenge the original order compelling arbitration. See 9 U.S.C. § 16(b).

To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014), quoting *Zurich American Ins. Co. v. Watts Industries, Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

---

[6] The charity plaintiffs have not appealed, though the principles in the text above would also seem to apply to jurisdiction over their claims.

Because "arbitration agreements are contracts, a 'party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *A.D.*, 885 F.3d at 1060, quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (internal quotation marks omitted); see also *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The key issue in this case centers on the first element—whether there was an agreement to arbitrate.

Where "the making of the agreement for arbitration … is not in issue," the court shall order "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. But if the party opposing arbitration identifies a genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place, there must be a trial on that issue. 9 U.S.C. § 4 ("If the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof."); *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). When a trial court has decided the issue of arbitrability without a trial, as with summary judgment motions, we view the evidence and draw all reasonable inferences in favor of the party opposing arbitration. *Id.* at 735.

"When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco*, 765 F.3d at 781. The parties have relied on Illinois law here, and we do the same. See *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809 (7th Cir. 2011) (in absence of dispute over choice of law, courts apply law of forum state to decide whether parties agreed to submit disputes to arbitration).

The Appellate Court of Illinois laid out applicable law in affirming a decision not to compel arbitration in *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534 (Ill. App. 2021). The court summarized:

> The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81, 405 Ill. Dec. 748, 59 N.E.3d 41. Only when no factual dispute exists does the issue of a contract's existence become a question of law for the court. *Hany v. General Electric Co.*, 221 Ill. App. 3d 390, 397, 163 Ill. Dec. 790, 581 N.E.2d 1213 (1991).
>
> * * * For a transaction to constitute a contract, the basic requirements are the existence of an offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151, 301 Ill. Dec. 440, 847 N.E.2d 99 (2006). For a contract to be enforceable, there must also be mutual assent as to the contract's terms. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 51, 365 Ill. Dec. 876, 979 N.E.2d 480 (citing *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30, 161 Ill. Dec. 335, 578 N.E.2d 981 (1991)). "'An offer is an expression by one party of his assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express his assent to the identically same terms. An offer looks forward to an agreement—to mutual expression of

assent.'" *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill. App. 2d 2, 8, 176 N.E.2d 1 (1961) (quoting 1 Arthur L. Corbin, Corbin on Contracts § 11, at 23 (1950)). Whether parties have mutually assented to the terms of a contract is a question of fact. *Calo*, 31 Ill. App. 2d at 18, 176 N.E.2d 1. Whether mutual assent or an intent to accept exists is determined by an objective standard. *McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498, 511, 44 Ill. Dec. 570, 411 N.E.2d 936 (1980). In other words, it is not necessary that the parties share the same subjective understanding as to the contract's terms, as it suffices if their conduct objectively indicates an agreement to the terms of the purported contract. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313–14, 113 Ill. Dec. 252, 515 N.E.2d 61 (1987). Only the parties' overt acts and the communications between them may be considered in determining whether and upon what terms they have entered into a contract. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 133, 393 Ill. Dec. 173, 33 N.E.3d 917.

194 N.E.3d at 542–43 (whether plaintiff had agreed to arbitration clause depended on disputed facts).

PayPal does not contend that Kass expressly manifested her agreement to the mandatory arbitration clause in the later User Agreement. It contends instead that it retained the right, in effect, to propose amendments that would take effect if they were communicated to Kass by email and if she took no

affirmative steps to reject them, such as by cancelling her Pay-Pal account or opting out of the arbitration clause.[7]

When the question of objective manifestation of assent turns on whether a communication was received by the party against whom enforcement of a contractual term is sought, the trier of fact may find help in the "mailbox rule." The district court relied on our decisions in *Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013), and *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), when applying the mailbox rule to the facts here. *Friends for Health*, 2018 WL 2933608, at *6. Unfortunately, some language in *Ball* strayed beyond the facts before the court and seems to have misled the district court's understanding of the mailbox rule in this case. We said in *Ball*: "A presumption exists that [the communications] were all properly sent, received, and read." 723 F.3d at 830. Properly received and read, yes, but not "properly sent."

In *Ball*, the administrators of an estate sued an attorney and real-estate agent who had represented the decedent in property transactions that seemed to be at odds with the decedent's will. 723 F.3d at 815. Analyzing a claim against the real-estate agent for breach of fiduciary duty, which hinged in part on whether "the decedent had competent and independent advice" regarding the transactions, we found that the decedent "had a full understanding of all relevant facts" in part because his attorney had sent him multiple letters and emails explaining in detail the nature of the real-estate transactions. *Id.* at 825, 829–30, citing *In re Estate of Long*, 726 N.E.2d 187,

---

[7] PayPal has not pursued on appeal a theory that posting the amended User Agreement on its website was sufficient notice to Kass so that her failure to act accepted the arbitration clause.

191–93 (Ill. App. 2000). The administrators argued, however, that the evidence was insufficient to show that the decedent had received and understood those communications. *Id.* at 831. We disagreed, both because the decedent's own communications and "conduct indicate[d] that he [had] received and read them," and because the mailbox rule created "a presumption … that the emails were received and read." *Id.* at 831. There was no affirmative evidence that the letters and emails were not read and understood that would have rebutted that presumption. *Id.* at 830.

That articulation of the Illinois mailbox rule was essentially correct. Where a communication is shown to have been properly sent, Illinois law presumes that it was received. *Weisberg v. Handy & Harman*, 747 F.2d 416, 421 (7th Cir. 1984) ("Illinois courts employ a presumption that 'a letter, properly addressed and with proper postage is presumed received by the addressee in due course.'"), quoting *Liquorama, Inc. v. American Nat'l Bank & Trust*, 408 N.E.2d 373, 375 (Ill. App. 1980); see also *Credit Union 1 v. Carrasco*, 107 N.E.3d 1021, 1026 (Ill. App. 2018); *Tabor & Co. v. Gorenz*, 356 N.E.2d 1150, 1154 (Ill. App. 1976).

What matters in this case is that the presumption simply is not conclusive. "The presumption is not conclusive and may be rebutted by evidence that the correspondence was not received by the addressee." *First Nat'l Bank of Antioch v. Guerra Constr. Co.*, 505 N.E.2d 1373, 1376 (Ill. App. 1987). Under Illinois law, if the addressee denies receiving the communication, the presumption is rebutted. Whether the communication was received "becomes a question of fact to be decided by the trier of fact." *Liquorama*, 408 N.E.2d at 375; see also *Talmage v. Union Cent. Life Ins. Co.*, 43 N.E.2d 575, 582 (Ill. App.

1942) (evidence of proper mailing and denial of receipt posed question for trier of fact).

Unfortunately, in an earlier passage in *Ball*, we added one verb that stretched the mailbox rule beyond its recognized scope. We wrote that a "presumption exists that" a communication was "properly *sent*, received, and read." 723 F.3d at 830, citing *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000) (emphasis added). The district court here relied on this language in *Ball*, but neither *Kennell* nor any Illinois case supports a presumption that a communication was "properly sent." See *Kennell*, 215 F.3d at 829 ("A jury generally is permitted to infer that information sent via a reliable means … was received."); *Credit Union 1*, 107 N.E.3d at 1026–27 (presumption not triggered where defendant denied receipt by affidavit and plaintiff offered no "proof that the item was contained in [a] properly addressed envelope with adequate postage affixed and that it was deposited in the mail"), quoting *Tabor & Co.*, 356 N.E.2d at 1154; *Liquorama*, 408 N.E.2d at 376 (fact that letter was incorrectly addressed barred "use of the presumption, rendering the question of receipt an issue for the trier of fact"). Even the facts in *Ball* did not support such a presumption of proper dispatch. There was no dispute in *Ball* that the communications in question were in fact sent, and there was no direct evidence that they were not received, read, and understood. 723 F.3d at 816–18, 830.[8]

Presuming that a communication was not only properly received and read but was also properly sent puts the cart

---

[8] The same was true in *Tinder*, where the relevant communication, a brochure announcing a mandatory arbitration program, was "definitely sent." 305 F.3d at 736.

before the horse. Before we may presume receipt, there must be sufficient evidence that the communication in question was sent. In resolving a motion to compel arbitration, a court may apply the mailbox rule as a matter of law only where there exists no genuine dispute of material fact that the relevant communication was sent. See *Tinder*, 305 F.3d at 735, citing 9 U.S.C. § 4. And in any event, if the addressee denies receipt, then the critical issue of whether the communication was in fact received must be decided by a trier of fact. *Liquorama*, 408 N.E.2d at 375; see also 9 U.S.C. § 4 (noting jury trial may be available to try issue of agreement to arbitrate); *Bazemore v. Papa John's U.S.A., Inc.*,— F.4th —, —, 2023 WL 4631540, at *1– 2 (6th Cir. 2023) (reversing order compelling arbitration where plaintiff denied ever having seen arbitration agreement bearing his electronic signature: "We see no reason whatever that would prevent a reasonable factfinder from believing Bazemore's testimony—which means that his testimony created a genuine issue of material fact."). As we explain next, however, the mistaken language in *Ball* does not affect the result here.

B.  *Whether Kass Agreed to the 2012 Amendment to the User Agreement*

Whether the district court properly ordered arbitration of Kass's claims depends first on whether the undisputed evidence shows that PayPal sent her notice of the 2012 amendment. PayPal's evidence says that it "would have" sent Kass an email in October 2012 notifying her of the mandatory arbitration provision because notice of the amended agreement was emailed "to active PayPal users, such as Ms. Kass, in October 2012." The declarations by Squires and McElmeel support this assertion.

PayPal's evidence does not establish with certainty that the email notification was sent specifically to Kass, but Illinois courts recognize that the sending of a communication can be shown "by evidence of corroborating circumstances tending to establish the fact that the custom as to [sending] has been followed in a particular case…." *Tabor & Co.*, 356 N.E.2d at 1154; accord, *First Nat'l Bank of Antioch*, 505 N.E.2d at 1376–77 (plaintiff showed sufficient evidence of mailing with testimony that it followed usual office practice in particular case of notice to defendant). Here, the Squires and McElmeel declarations provide the needed evidence about both PayPal's usual practice in emailing amendments to the User Agreement and the use of that practice with the 2012 amendment. Kass has not offered evidence contradicting defendants' evidence tending to show that the email was probably sent to her. Because the only evidence in the record tends to show that PayPal followed its customary notification practices when it announced the 2012 User Agreement, the mailbox rule's presumption is triggered. We therefore presume that the email was received by Kass, but without relying on the overly broad language in *Ball* about presuming a communication was sent.

Under Illinois law, however, even where the presumption is triggered, if the intended recipient denies receipt, that denial rebuts the presumption. Whether the communication was in fact received must then be decided by a trier of fact. E.g., *Liquorama*, 408 N.E.2d at 375; *Talmage*, 43 N.E.2d at 582. That is the case here. Kass expressly denies receiving the email. She did not testify only that she did not remember receiving it. She testified that she did not receive it. A trier of fact must therefore weigh PayPal's evidence of custom and practice against Kass's denial of receipt and determine

whether Kass should be charged with having received notice of the arbitration amendment.

Defendants resist this conclusion. Relying on *Tinder*, defendants argue that Kass's "conclusory denial that she saw or received the email is insufficient to create a triable issue." We disagree. There is nothing conclusory about such a factual denial. See *Lindsey v. Bd. of Educ. of City of Chicago*, 468 N.E.2d 1019, 1024 (Ill. App. 1984) (differentiating between a "factual denial" or "factual defense" and a "conclusory" one). When a party denies signing a contract, committing a crime, or doing anything else, the denial is an assertion of fact. And far from being conclusory, such a denial can create a genuine dispute of fact. Accord, *Bazemore*, — F.4th at —, 2023 WL 4631540, at *2 (applying Kentucky law, reversing order summarily compelling arbitration where plaintiff testified he never saw arbitration agreement).

In effect, PayPal asks us to change Illinois law, to treat the presumption triggered by the mailbox rule as irrebuttable. That is not our role. Where there is such a denial of receipt, Illinois law requires a trial of the factual issue. *Tinder* did not hold otherwise. The plaintiff there did not actually *deny* having received notice of the mandatory arbitration agreement at issue in that case. Rather, her affidavit said only that she did "'not *recall* seeing or reviewing the Arbitration Program brochure'" that the defendant had shown was "definitely sent." 305 F.3d at 735–36 (emphasis added). Because the plaintiff "asserted only that she [did] not remember receiving or seeing the brochure," we held that her affidavit did "not raise a genuine issue whether the brochure was distributed to her." *Id.* at 736 (applying Wisconsin law in way that is consistent with Illinois law); see also *Talmage*, 43 N.E.2d at 582

(presumption "not rebutted by testimony that [letter] could not be found" years after sending where "there was no direct denial" of receipt).

Because Kass offered evidence that flatly denied that she received the notice from PayPal of the mandatory arbitration clause, Illinois law requires that a trier of fact decide whether she received the notice. The judgment of the district court is VACATED and the case is REMANDED for a trial on that issue and such further proceedings as may be necessary, consistent with this opinion.