In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――――

No. 24-1042

JIM ROSE and ANITA GIAN,

*Plaintiffs-Appellants*,

*v.*

MERCEDES-BENZ USA, LLC, *et al.*,

*Defendants-Appellees*.

―――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-6099 — **Mary M. Rowland**, *Judge*.

―――――――――――

ARGUED OCTOBER 21, 2024 — DECIDED FEBRUARY 13, 2026

―――――――――――

Before ROVNER, SCUDDER, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Plaintiffs Jim Rose and Anita Gian each purchased a Mercedes-Benz car equipped with "mbrace," a subscription-based, 3G wireless communication system. Eventually, 4G and 5G cellular technology replaced 3G, rendering the mbrace systems largely obsolete. Rose and Gian requested that their dealerships replace the outmoded systems at no cost but to no avail. And so, they filed this class action lawsuit against Mercedes-Benz USA, LLC and

Mercedes-Benz Group AG (collectively, "Mercedes") alleging, among other things, breach of warranty under federal and state law.

In response, Mercedes moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4, citing the mbrace Terms of Service. The district court granted the motion and, because neither party requested a stay under 9 U.S.C. § 3, dismissed the case without prejudice. Plaintiffs appeal, arguing that they did not agree to arbitrate their claims. We affirm.

**I**

Mercedes's mbrace subscription service enabled Plaintiffs' cars to access certain safety, security, and entertainment features. These features included smartphone integration and roadside assistance utilizing a 3G cellular network. Although Plaintiffs' recollections of the activation process are hazy, each recall activating a free, limited-time subscription to the mbrace service. And, when the free subscription expired, each subscribed to the service at a monthly fee.

The mbrace Terms of Service provide that they constitute a "Binding Agreement" between subscribers to the mbrace service and the service provider (here, Verizon Telematics, Inc.); the document also expressly lists Mercedes as a third-party beneficiary under the Agreement. Furthermore, the Agreement states (in all capital letters), "You will have agreed to these terms of service … by speaking with a customer service representative … and confirming that you wish to sign up for the service." It also provides (again in all capital letters) that the parties "agree that, to the fullest extent provided by law … any controversy or claim arising out of or relating to … any product or service provided under or in connection with

these terms of service … will be settled by independent arbitration."

During the relevant time, Thomas Grycz, Mercedes's Supervisor of Product Technical Support, was responsible for the mbrace subscription service. According to Grycz, to activate the subscription, the car owner must either enroll at a Mercedes dealership or contact the mbrace call center. And, when a person contacts the mbrace call center, Grycz attests, an mbrace representative informs the caller of the Terms of Service and directs the caller to the Agreement for review.

Furthermore, once a car owner has activated the mbrace subscription, Grycz states, Mercedes sends the new subscriber a Welcome Kit and a Welcome Email that reminds the subscriber that the service is subject to the Agreement. Moreover, the email provides the subscriber with a hyperlink to a copy of the Agreement. Additionally, when a subscription is about to expire, Grycz notes, Mercedes sends the subscriber a renewal email, which also references the Agreement.

For his part, Rose recalls, to the best of his recollection, that he subscribed to the mbrace service by contacting the call center on the day he purchased his car. Gian, on the other hand, does not remember precisely how she subscribed to the service. She believes that her subscription may have been active when the dealership delivered the car to her residence shortly after her purchase, but Gian does not meaningfully dispute Mercedes's evidence that she in fact activated her mbrace subscription two days after she purchased her car at the dealership. And, once their respective free subscriptions ended, they both continued the service by paying a monthly fee. Neither recall being informed of the Agreement, however.

After Plaintiffs filed this lawsuit, Mercedes informed them that they were bound by the arbitration provision in the Agreement and requested that they resolve the dispute through arbitration. Plaintiffs refused.

## II

When considering a district court's ruling on a motion to compel arbitration under the Federal Arbitration Act (FAA), "we review findings of fact for clear error and rulings on questions of law de novo." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (citation omitted).

Congress enacted the FAA "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "When a party neglects or refuses to arbitrate despite a valid written agreement to do so, § 4 authorizes a district court to issue an order compelling arbitration." *Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 134 F.4th 953, 957 (7th Cir. 2025).

That said, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). Accordingly, the party seeking to compel arbitration bears the burden to establish: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

Plaintiffs focus on the first element, arguing that Mercedes has failed to establish the existence of an arbitration

agreement. "Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). Here, both parties rely on Illinois law, and so, we shall as well.

Illinois courts use an objective approach to determine whether parties have mutually agreed to the formation of an agreement. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Under this approach, the parties need not "share the same subjective understanding as to the terms of the contract." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987). However, "there must be a meeting of the minds or mutual assent as to the terms of the contract." *Id.*

To this end, in the context of a sale, we ask whether a seller has "adequately communicate[d] all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receive[d] reasonable notice of those terms." *Sgouros*, 817 F.3d at 1034. In other words, we ask whether "a reasonable person in [the purchaser's] shoes would have realized that he was assenting to" the terms of the contract. *Id.* at 1035.

While the FAA "does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet," we have "analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). It follows that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the

party must identify *specific evidence* in the record demonstrating a material factual dispute for trial." *Id.* (emphasis added).

In Plaintiffs' view, none of Mercedes's communications provided them with sufficient notice of the terms of the Agreement. Accordingly as they see it, their activation of the mbrace service and continued use cannot constitute assent to the Agreement or its terms. In support, they rely primarily on three district court cases.

First is *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447 (N.D. Ill. 2021). There, the only evidence of the plaintiff's assent to an arbitration provision was that he had clicked on a "Place Your Order" button on a website when ordering a DNA analysis report from the provider. *Id.* at 450–51. Finding lack of assent, the district court noted that the provider had failed to describe where or how the terms of use were available on the website. Nor was there any evidence from which a reasonable factfinder could conclude that the plaintiff had notice of the terms of use. *See id.* at 451.

Second is *Gilbert v. I.C. System, Inc.*, No. 19-CV-04988, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021). In that case, a collection agency for Sprint moved to compel arbitration based entirely on a declaration attesting that the plaintiff had activated a Sprint account and that Sprint had provided the terms of service upon activation. *See id.* at *7. Because the declaration lacked any description of the account activation process or a customer's opportunity to review the terms of service, the court held that the defendant had not satisfied its burden to show mutual assent. *See id.* at *8.

Finally, we have *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020). There, the court held that

distracting visual clutter on a kiosk screen and inconspicuous coloring of a hyperlink to the terms of service failed to provide customers with adequate notice that they were assenting to the terms when pressing the "Pay Now" button. *See id.* at 884–85. As such, the court held that a subsequent email to customers explaining that the terms of service included an arbitration provision did not establish an agreement to arbitrate in the first instance. *See id.* at 886.

The record here is markedly different. As Grycz described (and Plaintiffs do not dispute), when a car owner contacts the mbrace call center, a representative informs the caller of the Agreement and where to locate and review the Agreement, which is accessible via Mercedes's website. Such information would place a reasonable person on notice that initiating a subscription would trigger the Terms of Service and that it would be prudent to review the Agreement before subscribing. *See Sgouros*, 817 F.3d at 1035; *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121–22 (Ill. App. Ct. 2005) (holding that the statement "'All sales are subject to Dell's Term[s] and Conditions of Sale'" and conspicuous blue hyperlinks to those terms provided adequate notice). Indeed, nothing prevented those who contacted the call center from hanging up, reviewing the Agreement, and recontacting the call center to subscribe. Rather than doing so, however, Plaintiffs elected to activate their subscriptions. This evidence, in and of itself, is sufficient to establish notice that an mbrace subscription was subject to the Agreement and its terms.

Furthermore, as Grycz explains, once a customer subscribes, he or she receives a Welcome Kit and a Welcome Email, both of which refer the customer to the Agreement. Citing *Wilson*, Plaintiffs counter that these communications were

insufficient to constitute notice, but here, unlike in *Wilson*, Plaintiffs received notice that their subscriptions would be subject to the Agreement *prior to* commencing their subscriptions.

Plaintiffs next contend that they have raised a genuine issue of material fact regarding whether the call center representative in fact provided them information about the Agreement. But Grycz described in detail the protocol that call center representatives followed during the relevant period in question when they fielded inquiries from potential mbrace subscribers. This is enough to create a rebuttable presumption that the information was provided to car owners who wanted to subscribe to the service. *See Kass*, 75 F.4th at 704. Of course, Plaintiffs can rebut this presumption by attesting that they never received information about the Agreement during their sign-up process, *see id.* (noting that plaintiff "expressly" denied receiving the communication), but they fall short of that here. Rather, both Rose and Gian state only that they "do not recall" whether anyone from Mercedes provided the information to them. Such statements are not enough to rebut the presumption of notice given this record. *See Tinder*, 305 F.3d at 735–36.

Simply put, Mercedes has presented unrebutted evidence that mbrace subscribers receive notice of the arbitration provision in the Agreement prior to initiating their subscriptions. And Plaintiffs assented to the Agreement by subscribing to the service.

*        *        *

For the foregoing reasons, the judgment is AFFIRMED.